**MAPCO, INC., Appellant,**

v.

**Nolan C. HOLT, et ux., et al., Appellees.**

**No. 8196.**

Court of Civil Appeals of Texas,
Amarillo.

Nov. 15, 1971.

Rehearing Denied Dec. 13, 1971.

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Perryton, Marion Fallwell, Tulsa, Okl., for appellant.

Linn, Helms & Countiss, Richard N. Countiss, Spearman, for appellees.

REYNOLDS, Justice.

This appeal involves two condemnation proceedings consolidated for trial. The judgment of the trial court is reversed and the cause is remanded.

Separate condemnation proceedings were initiated by Mid-America Pipeline Company, now MAPCO, Inc., appellant here, to secure easements across two tracts of land in Hutchinson County for an underground pipeline to transport anhydrous ammonia. Following hearings before special commissioners, appellant deposited in the registry of the county court double the amount of each award made by the special commissioners to the respective condemnees, and entered into possession of the condemned easements. Upon appeal of the awards to the county court, the appellees withdrew the amount of the awards from the court's registry, leaving as disputed issues only the value of each easement taken and the diminution, if any, in the market value of the remaining acreage in each tract. The two proceedings were consolidated for trial. From a judgment entered on a jury's verdict, appellant has perfected its appeal, assigning 31 points of error, broadly grouped into the three areas of improper statements and arguments, no evidence and against the greater weight of the evidence, and admission and exclusion of evidence.

The two tracts of land involved are situated in Hutchinson County, and both are owned by Nolan C. Holt and his wife, Georgia Holt. One tract, hereinafter referred to as the first tract, is the south one-half of Section 49, Block 5–T, T. & N. O. Ry. Survey, on which the Holt's home is located; the other land, hereinafter referred to as the second tract, is the northwest one-fourth of Section 1, Block 3 SA&MG Survey. Both tracts are cultivated. The first tract is irrigated and the second tract is dry land. The easement condemned is 50-feet wide and extends a distance of 3,450 feet (209.10 rods) in a general southwest to northeast direction across the approximate middle of the first tract. The easement extends a distance of 797 feet (48.30 rods) across the northwest corner of the second tract, crossing the west line thereof 617 feet south of the northwest corner and crossing the north line thereof 513 feet east of the northwest corner.

Mr. Holt testified concerning his farming problems attributed to the installation of the pipeline and the presence of the easement area, and to $14,119.50 in increased expenses and crop losses occasioned thereby relative to the first tract only. Two witnesses—James H. Godfrey, presented by appellant, and J. L. Brock, presented by appellees—testified as valuation witnesses, and gave opinion testimony as to the value of the easements taken and the damages to the remaining lands in each tract. Godfrey's opinion was that the value of the first tract easement was $643.50 and the damages to the remainder were $1,500.00, a total of $2,143.50; Brock's opinion valued the easement at $1,400.00 and the remainder damages at $15,800.00, a total of $17,200.00. The jury's verdict as to the first tract was $1,200.00 for the easement and $4,000.00 for the diminution in market value to the remainder, for a total of $5,200.00. With respect to the second tract, Godfrey valued the easement at $92.00 and the remainder diminution at $35.00, for a total of $127.00; Brock's opinion as to the easement was $45.50 and the remainder was damaged $7,954.50, for a total of $8,000.00. The jury's verdict as to the second tract was $200.00 for the easement and $1,237.50 for remainder diminution, for a total of $1,437.50. As to both tracts the valuation opinions of Godfrey and Brock totaled $2,270.50 and $25,200.00, respectively, and the jury's findings totaled $6,637.50.

Prior to trial, appellant filed and presented to the trial judge a motion in limine seeking to exclude, among other matters, without specific permission of the court first obtained, any reference or testimony to any conversation or transaction with any representative of appellant in connection with the attempt to purchase the easement, or the fact that appellant was involved in numerous condemnation cases, or that appellant had failed to make a bona fide attempt to negotiate settlement with appellees prior to condemnation. The motion was granted in these respects. The court, however, denied the motion insofar as it sought to exclude, in the same vein, the appellees' unwillingness to sell the easement rights sought.

At the trial, during the testimony given by Mr. Holt, his counsel, in disregard of the trial court's ruling on the motion in limine, elicited the testimony that if appellant made a reentry on the easement, Holt's problems would be the same or more, that Holt had been unable to agree with appellant on the amount of damages and consequently he was in court paying a lawyer, and that a Mr. Grover Dennison, a representative of appellant, had stated to him, "Other pipeline companies have been paying too much. We're in the pipeline business and we're not out to win friends. We're going to lay a pipeline through there, and we're going to show you people a thing or two." Following this testimony, Brock was allowed to testify that he had never heard of any condemnations in the area by pipeline companies other than appellant. Further, a Mr. Ralph Ball, a representative of appellant, was cross-examined by counsel for appellees as to appellant's propensity for profits and its certificate of condemnation as being a power of the Federal Government to take people's property. Appellant timely objected to all this testimony as it was being given, but the trial court, contrary to its ruling in granting a portion of the motion in limine, overruled each of appellant's objections and denied its motion for mistrial.

Thereafter, in the opening summation to the jury for appellees, their counsel made the following comments, with any objections interposed being noted:

"* * * Think of it this way: What would you take for the living room in your house? You'll keep the rest of the house, but you'll sell one room of it to somebody else; you didn't want to sell it. Talk about a different deal— why would a man who has a farm want to sell one acre out of the middle of it? Do you suppose you could go out to a farmer who has a good piece of land and say, 'I'd like to buy an acre of your land right out of the center of it'.

Well, he's not going to want to sell it, and you wouldn't want to sell one room of your house. You wouldn't want to sell the middle ten feet of your front yard, or your back yard, and you wouldn't want anybody taking it away from you. When you talk about values, keep that in consideration. * * *

"* * * But you're a farm wife or a farmer, and you and your husband are going out to look at this land with the real estate man. Now, your husband is a farmer and he's going to have to get out there with his boots on and shovel that mud, so he asks, 'What about easements on this property?' The real estate man is going to say, 'Well, there's three lines along the south side parallel with the fence line. They are Shamrock lines and the easement provides that they are going to have to pay damages to any crops, and they have been cooperative before and changed their line and put it down along the fence line to minimize the damages. But now I must tell you that MAPCO has a 50 foot condemned right-of-way, which your lawyer will see in the abstract of this property. This is a strip diagonally across part of the land.' Your husband is going to say, 'Well, what all can they do?' He's got to tell him that they can enter it any time they want to, they can pull bull dozers in on it, they can pull heavy trucks in on it, they can put men in there on it, they can put any kind of equipment they can get on the 50 foot right-of-way, and they can do anything they need to do on that land as far as operating that pipeline is concerned. * * *

"* * * They have inferred in this thing that if they re-enter, they are going to pay damages. * * * Now, what do you think that big clause in there means, if they are going to pay damages? It means that Mr. Holt, when ever he's got a problem, when ever his watering is disrupted and they do what ever they want to do, it means that he's going to have to hire a lawyer and he's going to have to sue and go back to court. That's a big deal, isn't it?

Thank goodness we still have a right to go to court, but how does he win by having to go to court every time to enforce his rights? Remember what Mr. Dennison told him—and it's uncontradicted: 'We're a pipeline people and we'll show you something about what we are going to do.' Well, they've got the arm of the law behind them, there's no doubt about it; they've got the right under Federal law to do it. But now you've got the right to make them pay, and that's all I want them to do. I want a fair settlement for these people for the damage that's been done to their land. Whether you're a farmer, or a housewife, or a plant operator, or an office worker, or what ever you are, it affects you and it affects me, because it could be your house next time, houses are not sacred with these people. If they had wanted to run the line right where his house is, they could done (sic) it. And if they couldn't, Mr. Lemon would be up objecting right now.

"MR. LEMON: I am objecting, Your Honor, right now. I think it's highly improper, prejudicial, and I ask the Court to strike it.

"THE COURT: Overrule the objection.

"And they could run it right through your house. * * * What we're saying is, that when they take something from him that he doesn't want to sell, he's entitled by law to be paid for it, and everyone of us knows that, except Mr. Lemon and MAPCO. They think that they can run their 2000 tons a day through there and take their profit, and do it year in and year out, and go right on and say, 'we can show you people what we can do'. I bet you they can't, I bet you they are going to have to pay for it.

"* * *

"Now, Shamrock, the land man from Shamrock said they had never had a

condemnation up in this part of the country, and I don't know how many years Shamrock has been laying lines up here, and they have never had to condemn. I wonder why these people have to condemn so many? They've got dozens of them.

"MR. LEMON: Your Honor, here again, counsel is violating the motion in limini (sic).

"MR. LINN: It's been opened up, Your Honor.

"THE COURT: Sustain the objection."

In his final jury summation, appellees' counsel made the following comments, with the interposed objection shown:

"All right. Now, let's balance the rights and wrongs in the deal. They say they'll pay damage for future entry—well, they haven't paid them for this time. Look what they have to do and the advantage they've got, and look what he has to do. They've got a $150.00 a day appraisal man, he hasn't sold much real estate, but his testifying business has got to be pretty good at $150.00 a day and $15.00 an hour. Now, Mr. Holt —he's got to hire an airplane and take pictures, and I don't know what that would cost an hour, he's got to hire a high-priced lawyer, if he gets a good one. I may be the only bad high-priced lawyer in the business, but anyway he's got to get one and he's got to pay him good money. And he's got to hire an expert witness to come in here. And they sit there, they bring in three lawyers, and I'm sure they could bring in more if they wanted to, they could bring in five, or whatever. This is one man and his wife, and he's out there trying to make a living on his property, and he's not bothering anybody. He is just making his living, just like you are living in your home and you like it and you want to be there and be left alone. Now, these people come in there out of the clear blue, they came in as trespassers on his property and start staking it out and admitted it on the stand. They just walked in and started putting stakes on his land. And their big officer tells them what they're going to do when he calls them on the telephone. And then they come up here and say he's been damaged $35.00 on one piece of land and $1,500.00 —well, I want to tell you something, right nearly always comes out somewhere. That's the reason we've got juries, that's the reason we've got you, because it could be you and your home. Even though you're not farmers, it could still be you. If it happened to you and your house was involved, you would want some people sitting there wondering which is the most important, for them to take their profits? Now, I like profits, there's nothing wrong with that, but this man needs to be paid for something that has been taken away from him. Now, if anybody is going to resolve anything in anyone's favor, I think it ought to be his.

"He's got some money coming, because they are going to be back, don't ever kid yourself on that. He's going to have problems on that pipeline from now on. * * * Now, this man is not lieing (sic). Why would he come up here and lie to you for money? He wouldn't do that, he comes from good stock and good people, but he's just one of the ones who didn't stand there and let them run over him, and there's a whole bunch more. There's a reason why these people have got problems.

"MR. LEMON: Once again I would like to object—

"THE COURT: Sustain the objection.

" * * * Take into consideration that when ever they come back in to change the size of the line, or alter it, or anything, it will be another lawsuit. He's got to take more time out from his work—he'll have another lawsuit and they're talking about profits."

After the jury was retired to consider its verdict, appellant moved for a mistrial because of improper argument of the profitability of the operation of the pipeline, oth-

er condemnation cases by MAPCO, going beyond the record and arguing facts and circumstances that are not in evidence, and violation of the ruling of the court on the motion in limine. The motion was overruled.

■ Obviously, the arguments were improper and, when considered in relation to the record, were so prejudicial that they contributed in a substantial manner to the verdict reached and the judgment entered in this case. By withdrawing the special commissioners' awards made to them, appellees assented to the taking of the easements and may not complain on trial that appellant had no right to take their property. State v. Jackson, 388 S.W.2d 924 (Tex.Sup.1965). Thus, the only ultimate litigious issue before the jury was the just recompense to which appellees were entitled as a result of the condemnation. That amount is the values of the easements taken, together with the diminution, if any, in the market values of the remaining acreage in each tract. The parties are agreed that the easements taken have value and that the market values of the remaining lands have diminished in some amount; appellees, then, are entitled to a money verdict and judgment. The diminution, however, is to be measured by the properly admissible evidence of conditions of the lands before and after the taking of the easements, the suitability and adaptability of the lands, the surroundings, and all circumstances which tend to depreciate the market values. State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194 (1936). But none of these elements of depreciation include a contrast of a wealthy corporation with a farmer trying to make a living on land, a portion of which he did not wish to sell; or the inclusion of damages by the juxtaposition of the jury's viewpoint with that of appellees; or infliction of damages because appellant might in the future come upon the land again with the attitude allowed to be exhibited in this proceeding, or because appellant's attitude or procedure was different from that of other pipeline companies owning easements in the area, or because appellant was involved in other condemnation proceedings, or for the reason that appellant did not make a bona fide attempt to settle with appellees or because of the intimation that appellant should be punished for its attitude or procedure. All of these matters are contained in appellees' forceful arguments made to the jury, and would have been prevented had the trial court promptly enforced its motion in limine ruling and sustained the timely objections.

Appellees contend that the arguments are proper and that, at most, such were invited and any error was waived because of appellant's failure to object to most of the arguments. Appellees argue that, in any event, no harm has been demonstrated by appellant since the jury's verdict is within the range of the valuation testimony.

We carefully studied this record prior to our determination that the arguments were improper. It is evident that all phases of the case were vigorously presented and contested to the extent that counsel, in their zeal, encroached in areas they otherwise might not have invaded in the trial of the usual condemnation case. Even in this atmosphere, our study of the record, without setting out all the incidents, convinces us that appellant's encroachments were not such as to invite either the testimony admitted over objection or the arguments predicated thereon.

■ Neither do we deem the improper arguments to have been waived. Excepting the economic contrast and appellees' unwillingness to sell, the genre of the matters argued were properly included in appellant's motion in limine and properly granted by the trial court; nevertheless, testimony of the matters excluded on granting the motion was admitted by the trial court over appellant's objections, as well as the testimony of appellant's profit operation, and all of these subjects formed the basis of a substantial part of appellees' arguments. Reversible error occurs when the matters attempted to be properly ex-

cluded by the motion in limine are in fact prejudicially injected over timely objection. Hartford Accident & Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.Sup. 1963). While appellant's counsel should have timely objected to all of the improper arguments, as he did to the testimony and to some of the arguments, appellees' counsel had the first duty to comply with the ruling of the court on the motion in limine, and next the trial court had the duty to prevent both a violation of its ruling and improper statements. Rule 269, Texas Rules of Civil Procedure. The fact that the trial court sustained two of appellant's objections to the argument does not remove the degree of vice presented by the cumulative effect of the arguments.

■ It is correct that the jury's verdict is within the range of the valuation testimony and, as appellees point out, the verdict was nearer in dollar amount to the testimony of Godfrey, appellant's valuation witness, than Brock's appellees' valuation witness. It is as evident that the jury did not wholly accept the valuation testimony of either to any material extent. It may be that the jury did not accept Godfrey's opinion because it believed appellees' recovery was more than he fixed. It may be that the jury did not accept Brock's testimony because the jury did not believe his opinion that the remainder of both tracts was depreciated $50.00 per acre irrespective of where the pipeline was located, its length, or the obvious difficulty in running irrigation water across the surface of the pipeline area on the irrigated land which difficulty was not then present in the dry land tract. In any event, the illation is that the jury, under the license of the trial court's rulings, was permitted and at liberty to fix the amount of its verdict on erroneous measures of damages, which constitutes reversible error. Texas & N. O. Ry. Co. v. Sturgeon 142 Tex. 222, 177 S.W.2d 264 (1944).

The cumulative effect of the errors alluded to above are such that they were cal-

culated to, and probably did, cause the rendition of an improper verdict and judgment. Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956).

Because of our remand, we shall not review appellant's no evidence and against the greater weight of the evidence points other than as are stated herein, inasmuch as the evidence and the predicate upon which it is based very well could be different upon another trial. We do, however, make the following observations in connection with the matters complained of that may arise in the event of another trial.

■ Under the testimony in this record, we see no error in the trial court's refusal to permit Godfrey to testify to the comparison of sales of land in Hale County, a distance of some 150 miles from the land involved in this proceeding. Whether the Hale County property met the test of similarity is largely a matter within the discretion of the trial court and no abuse of discretion is shown in the record in this respect. Morgan v. State, 343 S.W.2d 738 (Tex.Civ.App.—El Paso 1961, writ ref'd n. r. e.); State v. Childress, 331 S.W.2d 230 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.). Neither do we find error in the trial court's permitting testimony of specific items of damage resulting from construction of the pipeline so long as such items are admitted, not as the measure of damages, but as elements related to and tending to affect the market value of the land to enable the jury to arrive at the correct market value. State v. Carpenter, supra. Furthermore, we do not agree with appellant's contention that the trial court should have struck, upon motion, the valuation testimony of J. L. Brock. His qualification is a matter entrusted to the discretion of the trial court, City of Teague v. Stiles, 263 S.W.2d 623 (Tex.Civ.App.—Waco 1953, writ ref'd n. r. e.), and his qualification met the legal test set out in Rayburn, Texas Law of Condemnation, § 126. Appellant's complaints in this respect are more properly directed to the weight,

rather than the admissibility, of such testimony.

■ Upon another trial, hearsay testimony of personal injury claims due to anhydrous ammonia, or testimony of attitudes and easement negotiations of other pipeline companies, or of speculation of damages in the event of appellant's re-entry on the easement, should not be allowed. None of these matters are material and are prejudicial to the ultimate issue to be decided.

Reversed and remanded.