360 So.2d 818 (1978)
Mrs. Ellove JOHNSON et al.
v.
The INSURANCE COMPANY OF NORTH AMERICA and Schwegmann Brothers Giant Super Markets, Inc.
No. 61179.
Supreme Court of Louisiana.
June 19, 1978.
Rehearing Denied July 26, 1978.
*819 Melvin J. Giepert, Arnold & Giepert, New Orleans, for plaintiffs-respondents.
Madison C. Moseley, Beard, Blue, Schmitt, Mathes, Koch & Williams, New Orleans, for defendants-applicants.
CALOGERO, Justice.
Plaintiff Mrs. Johnson was injured while a customer in a Schwegmann's supermarket. Cans of merchandise fell from a display shelf and struck her left leg and foot. She and her husband were awarded $2,480 for her personal injuries and medical expenses against the supermarket and its insurer. The Court of Appeal affirmed, 351 So.2d 190 (La.1977), one judge dissenting.
We granted certiorari, 353 So.2d 1038 (La.1978) because we felt that the Court of Appeal unjustifiably extended the principles enunciated in Gonzales v. Winn-Dixie Louisiana Inc., 326 So.2d 486 (La.1976) and Kavlich v. Kramer, 315 So.2d 282 (La.1975).
When a customer in a self-service store proves injury resulting from a premise hazard, the burden shifts to the store operator to exculpate himself from the presumption of fault thereby arising and to establish his own freedom from fault. Gonzales v. Winn-Dixie Louisiana Inc., supra; Kavlich v. Kramer, supra. As these cases and the jurisprudence they cite illustrate, a premise hazard is a condition of the premises or of the store operation that results in an unreasonable risk of harm to customers under the circumstances. See Restatement of Torts 2d, Sections 282, 289, and 291.
The issue in this case is whether such a premise hazard was preponderantly proved by the evidence.
Mrs. Johnson was shopping at Schwegmann's Westbank store. As she reached toward an upper shelf to get a small can of juice, three large cans of fruit juice fell from a bottom shelf, two of which struck her leg and caused her present injuries. The incident occurred at a section of the supermarket where canned juices were displayed on open shelving in three tiers. The cans had been removed from boxes and stacked on top of each other on the shelves. Mrs. Johnson testified that she did not notice before the accident how the cans were stacked, but after the accident she did notice that the cans were in disarray. Her husband testified that he was waiting in *820 the parking lot for his wife and did not enter the store until after the accident had occurred. The security guard for the store testified that Mrs. Johnson told him after the accident that when she was reaching up for the orange juice the bottom portion of her leg touched the shelf the can fell from, but at trial Mrs. Johnson denied making this statement.[1] The store manager and security guard described in detail store policy concerning methods and procedures used to insure that the floor was free of debris and the cans stacked properly on the shelves. The plaintiffs introduced a series of pictures taken on the juice aisle of the supermarket approximately one year after Mrs. Johnson's accident which show some of the juice cans stacked so as to slightly protrude over the edge of the shelf. While there was some testimony to the effect that if cans were badly stacked they would create a dangerous condition, and the store operator admitted that customers did occasionally move cans from shelf to shelf, there was absolutely no testimony that before the accident in question the juice cans were in disarray or protruding over the shelf edge. The fact that after the accident the cans were disarranged, with three cans on the floor, does not constitute evidence that the cans were in that condition before the accident. Nor do the pictures taken a year after the accident prove that the cans were protruding a year before.
Our opinions in Kavlich and Gonzales shift the burden of proof to a store operator after a plaintiff has shown that a premise hazard caused his injury. Once the premise hazard and the injury it caused are proved by a preponderance of the evidence, the burden of proof shifts to the store owner to show that he was not negligent. But that shifting does not occur until the plaintiff preponderantly proves a premise hazard.
We find that the evidence in this case does not preponderantly (i. e., more probably than not) show that the fruit juice cans were stacked in a dangerous manner before the accident in question. While the evidence does include some evidence that cans had been stacked unsafely in the store at various times, there is no evidence that the juice cans were improperly stacked on or before this accident, and certainly there was no preponderance to that effect. This being the case, the plaintiff has failed to carry her burden of proving a premise hazard and for that reason we conclude that the courts below erred in allowing her recovery.

Decree
Accordingly, the judgments of the district court and the Court of Appeal are reversed. Plaintiff's petition is dismissed with prejudice at her cost.
REVERSED AND RENDERED.
SANDERS, C. J., concurs.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents.
DENNIS, J., dissents for reasons assigned by TATE, J.
TATE, Justice, dissenting.
I respectfully dissent.

(1)
Here, the able and conscientious trial judge, fully aware that the primary issue concerned whether the stacks of heavy fruit-juice cans were in disarray at the time of the accident, made a considered factual determination that they were and that they constituted an unreasonable risk of harm to customers at this self-service grocery. This finding, based upon substantial evidence, was affirmed by the court of appeal.
Nevertheless, this reviewing court, ensconced in its marble tower, reaches an opposite conclusion, essentially based upon *821 an extremely restrictive view of the paper-recorded testimony of the live witnesses seen and heard by the trier of fact.
The victim of the injury had not, of course, observed the perilously stacked cans immediately before the accident. As was the design of this self-service store in so displaying the goods, this customer's eye was upon the cans she reached for at the top of the display case. However, immediately after the accident, she did observe the heavy cans on the bottom shelf in disarray, unsafely stacked three-high. So did her husband.
The store witnesses essentially testified that cans were never so disarrayed and that, if they did notice them so stacked, they were rearranged safely.
However, on an occasion subsequent to the accident, an investigator for the plaintiffs visited the store and took photographs of the disarray of the cans, perilously and unevenly stacked, at various places in the fruit-juice display portions of the store. The victim and her husband, who shopped at the store regularly, stated that the photographs portrayed the condition of the stacked cans witnessed by them on frequent occasions before and after the accident.
As I read their testimony (and as the trial court evaluated it), the store witnesses themselves admitted that, if so stacked in disarray, the heavy cans should have been rearranged so as to avoid the hazard of their falling onto customers.
In evaluating this testimony as credible (and in disregarding the testimony of the store witnesses of the always-safe condition of the cans, for reasons well indicated by the record), the trial court found that the plaintiffs had proved the defective stacking of the cans by a preponderance of the evidencethat, more probably than not, the cause of the accident was the fall of defectively stacked cans.
Thus, as stated in Green v. Schwegmann Brothers Giant Supermarkets, Inc., 325 So.2d 621, 622 (La.App. 4th Cir. 1976): "While it is true that plaintiffs cannot explain exactly what caused the stack of boxes to fall, they have raised the reasonable inference that improper stacking . . . was the cause."
I simply am unable to say how this court, under settled principles of appellate review, can disregard this factual determination (essentially based upon credibility evaluations) as erroneous.
If the cans were defectively stacked at the time of the accident (as the preponderance of the evidence indicates, in my opinion), how else could the victim prove it? Unfortunately, she had no television camera-man present to photograph the fall of the cans.
In the proof of these minor injuries, should the victim have subpoenaed ten, a hundred, a thousand customers to corroborate her testimony and that of her husband that the store made no real effort to maintain these three-high stacked heavy cans in a safe condition? If so, apparently this appellate court would still say: That is not enough; the victim should have had a witness who saw the defectively stacked cans immediately before and after they fell (if there was one, and if following her painful injury she had had the presence of mind and litigation-consciousness to take the witness's name and address).

(2)
In summary, considering the credibility evaluations and factual determinations reasonably within the province of the trial judge, the evidence preponderantly (i. e., more probably than not) shows that the heavy fruit-juice cans were so stacked, irregularly three-high and with some protruding over the edge of the shelf, as to be easily subject to fall because of their unstable conditioneither because of nearby movement, or else because a customer might inadvertently brush against the cans while reaching for goods which had been displayed on nearby or upper shelves for the purpose of attracting the interest of and purchase by self-service customers.
The record further supports a finding that, although the supermarket operator's employees may have initially stacked the *822 cans safely (and although they may have generally checked for disarray subsequently), nevertheless, the cans were subject to frequent disarray because of normal and usual customer conduct, with a consequent undue risk of falling and injuring customers shopping in the aisles adjacent to the shelves.
Under these circumstances, the prior courts in this case have correctly held the store operator liable for the victim's injuries resulting from the premise hazard so proven. The store management has not exculpated itself from its fault or negligence which arises from the precariously stacked cans and the method of so displaying them stacked three-high on open shelves, with the consequent unreasonable risk of harm to customers arising from their disarray so easily and frequently resulting.
In evaluating the unreasonableness of the hazard to customers, we should remember that this large self-service store could easily have minimized it by leaving the three-high heavy cans of fruit juice safely boxed instead of in an open unguarded display, subject to easy disarray, on the open shelves. So boxed safely, they may not have been as attractive nor have attracted the interest of as many customers. However, having chosen this unsafe and unsupervised method of display in order to sell more cans, the store operator should be held responsible for injuries resulting to customers from the unreasonable hazard created by its method of display and lax supervision of the unsafe condition thereby resulting in this large-volume supermarket operation.[1]
NOTES
[1] Because the guard's testimony was disputed by the plaintiff and apparently not accepted by the trial judge (who ruled for plaintiff) we do not rely on the guard's testimony as to what he was told by Mrs. Johnson. In any case, neither version of the story resolves to the central issue in the case: whether or not the cans were stacked incorrectly and dangerously prior to or at the time of the accident.
[1] In a smaller owner-operated grocery store, for instance, the operator would more likely be immediately aware of and correct any disarray than would the operator of a large self-service supermarket depending for profits upon mass customers, large volume, and low overhead (e. g., a minimum of employees).