FRED W. JONES, Judge.
Plaintiffs, Mr. and Mrs. Dale F. Patty, appeal a judgment rejecting their demands against Brookshire Grocery Company (Brookshire), its insurer, and Coca-Cola Bottling Company of Shreveport, Inc. (Coca-Cola) for damages for injuries sustained by Mrs. Patty at one of Brookshire’s Shreveport stores. We affirm.
According to the evidence presented at the trial, Mrs. Patty entered the Brookshire store involved in this litigation on the afternoon of November 1, 1977 for the purpose of purchasing some 7-Up soft drinks which were a special sales item. She had shopped at this store on a regular basis for some eight years and was familiar with the rack upon which soft drinks were displayed.
The rack in question, provided and stocked by Coca-Cola, was a standard L • shaped three shelf display rack identical to that used in supermarkets throughout the Shreveport-Bossier area. The top two shelves were metal, where 32-ounce soft drink bottles were placed either in cartons one stack high or simply as singles. On the bottom shelf the 32-ounce soft drinks bottles were arranged in six pack cartons three stacks high, with each stack separated from the other by a plastic material technically described as “Mylar Spring Roll Shelving.” This was a flexible material designed to hold cartons in the rack. With the removal of a carton, the plastic divider rolled back, making the next carton accessible.
Mrs. Patty desired to purchase three diet 32-ounce 7-Ups and three regular 32-ounce 7-Ups. Since none of the displayed cartons contained that particular mixture, and since she saw no empty cartons, she decided to remove three of the “regulars” from one of those cartons and substitute three diet 7-Ups from another section of the display rack. Pursuant to this scheme, Mrs. Patty removed one bottle from the “regular” pack and placed it on the plastic divider next to the carton. She then removed a second bottle and also placed it on the plastic divider next to the first bottle. As she proceeded to reach for a third bottle, one of the first two bottles toppled off the plastic divider. Mrs. Patty reacted by extending her foot to break the fall of the bottle. As a result, the bottle struck her foot and then hit the floor, breaking and causing the injuries to Mrs. Patty for which plaintiffs seek damages.
Plaintiffs asserted that because of its opaqueness the plastic divider appeared to be a rigid shelf upon which it was safe for Mrs. Patty to place the single bottles. Since this appearance was deceptive, it was a trap for the unwary customer and, as such, constituted a premise hazard. The burden then shifted to defendants to prove themselves free of negligence, which they had failed to do. Consequently, plaintiffs-appellants argue that the trial judge erred in holding that no premise hazard had been created by defendants because there was no unreasonable risk of harm to customers under the circumstances.
*423 As pointed out in William L. Prosser, Law of Torts (3rd Ed. 1964), p. 148, “the real basis of negligence is not carelessness, but behavior which should be recognized as involving unreasonable (emphasis added) danger to others.” Or, to put it another way, negligence is “conduct which falls below the standard established by law for the protection of others against unreasonably great risk of harm.”
Turning specifically to the duty of storekeepers, the following pertinent comments are found in 65 C.J.S. Verbo Negligence § 63(121):
“A storekeeper is not an insurer of the safety of his customers or invitees and is not liable for injuries unless they are caused by his negligence, fault or breach of duty. . . . Some latitude must be allowed a storekeeper to use and have nearby equipment reasonably necessary for the sale of his goods and to display his goods in a manner consistent with the nature of his goods and his business.” (pp 889, 890)
“The proprietor of a store who knows or by the exercise of reasonable care could discover a condition on his premises which he should foresee exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved, must exercise ordinary care either to make the condition reasonably safe for their use or to give warning adequate to enable them to avoid harm.” (pp 894, 895)
A premise hazard was defined in Johnson v. Insurance Company of N. America, 360 So.2d 818 (La.1978) as a “condition of the premises or of the store operation that results in an unreasonable risk of harm to customers under the circumstances.” The court further noted:
“When a customer in a self-service store proves injury resulting from a premise hazard, the burden shifts to the store operator to exculpate himself from the presumption of fault thereby arising and to establish his own freedom from fault.”
It is appropriate to note that from a factual standpoint we are not dealing with the typical falling merchandise case in which, without any action by the customer, cans or other objects which might have been improperly stacked or in disarray fell and struck the claimant. See, for example, Bell v. Bestyet Discount Foods No. 2, 372 So.2d 781 (La.App.2d Cir. 1979). On the contrary, our primary factual question is whether the display rack upon which this lawsuit focuses, with its plastic dividers, constituted a trap or hidden danger in that its appearance led Mrs. Patty to assume that the divider would safely support single 32-ounce soft drink bottles.
In this context, the case of Murphy v. Newark Insurance Co., 170 So.2d 248 (La. App. 4th Cir. 1964) is pertinent. There the plaintiff tripped over a slightly elevated concrete bumper in the merchant’s parking lot. She contended that the concrete object constituted a trap because it appeared to be a flat yellow line. Discussing the duty of storekeepers under these circumstances, the court stated:
“Storekeepers and property owners are not insurers of the safety of their invitees; they are only under a duty to keep their premises in a safe condition for use in a manner consistent with the purposes thereof, i. e., free of defects or conditions in the nature of hidden dangers, traps or pitfalls which are not known to the invitee and would not be observed by him in the exercise of reasonable care; the invitee assumes the obvious, normal or ordinary risks attendant on the use of the premises and storekeepers or owners are not liable for injuries to an invitee when those injuries result from a danger which should have been observed by the latter in the exercise of reasonable care. . . .
“There is no fixed rule for determining whether or not a defect in the premises is dangerous or in the nature of a trap; the facts and surrounding circumstances of each particular case control. ...”
In the case at bar it is apparent that the plastic dividers were designed and used for the purpose of supporting cartons of soft *424 drinks rather than single bottles. Two facts are significant: no single bottles were displayed or standing on the plastic dividers, and the plastic tended to curl or fold up when a carton was removed, indicating the flexibility of the material. Since the danger of placing a single bottle on the plastic divider should have been obvious to customers, the divider was not a trap or hidden danger. Consequently, we agree with the trial judge that this was not a premise hazard which constituted negligence on the part of defendants. For that reason, the burden of proving freedom from negligence never shifted to defendants.
Since plaintiffs-appellants did not prov.e by a preponderance of the evidence that defendants were negligent, we affirm the judgment of the trial court, at appellants’ cost.