(640 P 2d 352)

No. 52,512

FLORENCE LEE WASSON, *Appellee,* v. BREWER'S FOOD MART, INC., *Appellant,* and PEPSI-COLA GENERAL BOTTLERS, INC., *Appellant.*

Petition for review denied April 14, 1982.

Opinion filed February 11, 1982.

*Monti L. Belot* and *Mitchell S. Pettit,* of Weeks, Thomas & Lysaught, Chartered, of Kansas City, for appellant Brewer's Food Mart, Inc.

*Jerome V. Bales,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, for appellant Pepsi-Cola General Bottlers, Inc.

*Charles D. Kugler,* of Kugler and Dickerson, of Kansas City, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BULLOCK, J.: This appeal arises from an action in which Florence Wasson recovered for personal injuries which she sustained from a broken Pepsi-Cola bottle while shopping in Brewer's Food Mart. At the jury trial below only Mrs. Wasson presented evidence, Brewer's and Pepsi electing to stand on their unsuccessful motions for directed verdict. The jury found plaintiff's damages to be $86,000.00 and fixed the comparative degree of negligence at: Plaintiff, 22%; Brewer's, 64%; and Pepsi, 14%. Both Brewer's and Pepsi filed post-trial motions for a new trial or in the alternative for judgment notwithstanding the verdict. All motions were denied and appeal to this court was duly perfected.

On appeal, both Brewer's and Pepsi contend the trial court erred in not directing a verdict in their favor and, in addition, Pepsi contends the action against it was barred because the amended petition joining Pepsi as a defendant was not served on Pepsi until after the applicable statute of limitations had run. Inasmuch as we concur in the contention of Brewer's and the first contention of Pepsi, it will not be necessary for us to address Pepsi's second issue.

Mrs. Wasson was injured in Brewer's Food Mart on Sunday, November 9, 1975. Brewer's Food Mart is a typical self-service grocery store located in Bonner Springs, Kansas. On the day of the accident, Mrs. Wasson had driven alone to Brewer's, a store with which she was quite familiar. On this particular day, Brewer's was running a special on Pepsi-Cola and Mrs. Wasson had gone to the store to purchase some.

Upon reaching the pop section, Mrs. Wasson selected an eight-pack carton of regular Pepsi-Cola and put it in her shopping cart. She then pushed her cart a few feet up to the Diet Pepsi section in order to make a selection from that section for her husband. It was her intention to extract three bottles out of the regular Pepsi pack and replace them with the same number of Diet Pepsi bottles. Mrs. Wasson testified that the floor in the pop display area was free from broken bottles or glass, that she noticed no cartons which were stacked in a crowded or disheveled manner and that she saw nothing which alerted her to any kind of potential danger.

Mrs. Wasson walked up to the Diet Pepsi display and pulled a bottle out of a carton which was the top carton on a stack. As she

began to pull out a Diet Pepsi, she sensed that bottles were falling to her right. She contemplated stopping the fall of the bottles, but decided to merely turn and get out of the way. She was not able to see exactly how many bottles or cartons actually fell. At least one of the bottles hit the floor and burst and one of the pieces hit Mrs. Wasson's foot, causing it to bleed.

Mrs. Wasson candidly admitted that she did not see what happened to make the bottles fall, that she does not know the cause of the accident, and that the accident easily could have been the result of something another customer may have done to the stack of bottles shortly before she came along. No other person witnessed the accident. Individuals who arrived at the scene soon after the incident included Mary Ann Bates and Bruce Wasson, plaintiff's husband. Bates testified that she saw one carton of pop on the floor. Also, she remembered plaintiff saying, "If I didn't have to switch that pop, wouldn't have to get the pop, the carton wouldn't have fallen." Bruce Wasson testified that he saw two cartons of bottles on the floor, which weren't completely full. Some of the bottles had broken and some had not. When Robert Thompson, Sr., assistant store manager, arrived at the location of the accident, he saw one or two broken bottles and one carton on the floor. The Pepsi display appeared normal, but was not fully stocked.

Thompson was in charge of the store on the Sunday in question. As plaintiff's witness, he supplied the following uncontroverted additional information. At the time of the accident there were three pop companies which made deliveries to the store, Pepsi-Cola, Coca Cola and Seven-Up. When the respective pop companies made their deliveries, each driver cared for his company's section of the display. Pepsi-Cola made deliveries to the store every Monday and Friday. At the time of Mrs. Wasson's injury, no one from Pepsi had been in the store for two days.

The Pepsi display was restocked by store employees on Saturday, the day before the accident. Still, the display was again depleted by the time of the incident Sunday afternoon inasmuch as there had been a large number of customers through the store on that weekend—about three hundred on Sunday alone. Seven-Up likewise made deliveries on Friday, and their employees *could have* restocked or changed the Pepsi display after Pepsi's delivery on that same day. Thompson and other store employees

routinely checked the pop display from time to time, and, if the Pepsi delivery man had stacked the display incorrectly in some manner on Friday, it would have been caught by somebody at the store on the day of the delivery, two days before the accident.

Brewer's customers have been known to take bottles out of cartons and not replace them; lay bottles loose on top of cartons; replace cartons without pulling the mylar divider back out; and set cartons back down on top of the mylar roll, thereby tilting the carton towards the aisle. However, Thompson stated he knew of *no instance* where bottles had fallen when there wasn't some person close by who had caused the fall.

The shelving in use at the time of the accident was originally purchased from and installed by Associated Grocers Division. It was the same type of shelving generally used by other grocery stores in the area. The shelves were permanently affixed to the back wall of the display and tilted towards the back. The open cartons were stacked four deep and three or four high, and between each row or layer there were mylar plastic dividers. Each mylar sheet was permanently fastened to the back of the display with three or four metal screws. The mylar dividers added stability to the shelving because the rolled up portion exerts force on the front of the carton tending to hold the carton in place. These dividers had been in use at Brewer's and elsewhere since the late 1960's and each pop company furnished its own. In 1980, Pepsi-Cola put in the display presently located in the store, the former display being then removed and disposed of.

The foregoing summary contains all relevant evidence found in the record concerning the events surrounding Mrs. Wasson's injury. The only other evidence bearing on the issue of liability is the testimony of Donald Dressler, a consulting engineer, called by plaintiff to testify as an expert. Dressler is engaged in a general engineering practice, consulting in the areas of blasting, electrical engineering, civil engineering, mechanical engineering, safety engineering, construction defects and fire investigation, which practice he conducts out of his home in Leawood, Kansas. In relating his professional background, Dressler described his experiences with glass and stacking materials while employed in various industries, but stated that he has never been employed in the bottling industry, shelving industry, or carbonated beverage industry.

Dressler inspected the shelving which was used at Brewer's Market in January, 1980, at the request of plaintiff's counsel, but has never seen the shelving which was in place at the time of the incident. Dressler stated that the pop he viewed in 1980 was not stacked "properly." He testified that Brewer's shelves were not tilted back quite far enough, although he did not measure the tilt, did not know what the tilt was on the shelves in 1975 and does not know the optimum degree of slope for shelves of this type. He conducted no experiments or tests concerning the sloping of shelves. Mr. Dressler also opined that a rubber floor mat could have been placed on the floor to reduce the risk of breakage and that vertical partitions in the display would have provided more lateral support. He admitted, however, that he has done no testing to see what the effect of implementing those suggestions would be but testified he "certainly would like to do that," conceding that this is something that remains yet to be tested. The main problem concerning stability in displaying pop, however, according to Dressler, is *front to back* movement, rather than *lateral* stability.

Dressler next stated that tiering (cross-laying one stack over the other) could increase stability. Concerning the mylar dividers, Dressler testified that such dividers were almost universally used in 1975. He further stated that mylar does no harm in the stacking procedure. In his opinion, mylar does provide a slight amount of stability. Dressler's opinions concerning the mylar dividers were based upon some "very rudimentary tests" at local neighborhood stores, but there was no testimony as to the nature of those tests or experiments, or the conditions under which they were performed.

At the close of the evidence, Mrs. Wasson sought instructions on theories of (1) negligence; (2) strict products liability; and (3) res ipsa loquitur. The trial court rejected all save the contentions sounding in negligence. Inasmuch as no cross-appeal has been filed, questions concerning strict liability and res ipsa loquitur are no longer open to review. We turn then to the specific allegations of negligence, contained in the trial court's Instruction No. 15:

"15. The plaintiff, Florence Lee Wasson, claims that she sustained injuries and damages due to the fault of both defendants.

"She claims that defendant Brewer's Food Mart, Inc., was at fault in one or more of the following particulars:

"1. In stacking and maintaining unstable pop cartons;

"2. In utilizing improperly designed shelving for the display and sale of said pop cartons and their contents;

"3. In failing to warn plaintiff of a hazardous condition created by the acts set out in paragraphs 1 and 2 immediately preceding.

"She further claims that defendant Pepsi-Cola General Bottler's, Inc., was at fault in one or more of the following particulars:

"1. In the design, manufacture and sale of unstable pop cartons;

"2. In utilizing improperly designed shelving for the display and sale of their pop cartons and their contents;

"3. In stacking and maintaining for display and sale unstable pop cartons and their contents;

"4. In utilizing glass bottles as containers for carbonated pop beverages, thereby posing an explosive hazard to the public.

"5. In failing to warn plaintiff of a hazardous condition created by the acts set out in paragraphs 1, 2, 3, and 4, immediately preceding.

"The plaintiff has the burden to prove that her claims are more probably true than not true."

The scope of this court's review of the failure to grant a directed verdict was defined in *Simpson v. Davis,* 219 Kan. 584, Syl. ¶ 3, 549 P.2d 950 (1976):

"In ruling on a motion for a directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict."

With respect to reviewing the sufficiency of the evidence to support a jury verdict, the function of Kansas appellate courts is limited to determining whether or not the verdict is supported by substantial competent evidence. *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 440, 581 P.2d 372 (1978). The term "substantial evidence" has been defined as "evidence which possesses something of substance and relevant consequence and which furnishes a substantial basis of fact from which the issues tendered can reasonably be resolved." *Delight Wholesale Co. v. City of Prairie Village,* 208 Kan. 246, 249, 491 P.2d 910 (1971).

Giving Mrs. Wasson the benefit of every permissible inference, as we are bound to do, however, we do not find substantial competent evidence supporting this verdict in the record before us. The fatal flaw in the proof, as we view it, lies in Mrs. Wasson's absolute failure either to demonstrate any *negligence* on the part of Brewer's or Pepsi or that any conduct of theirs *caused* the fall of the bottle which injured her. Although Mrs. Wasson accuses

Brewer's and Pepsi of various acts of alleged negligence, none are supported by evidence. Perhaps more importantly, negligence, even if present, is never actionable unless it is also shown to be the *cause* of the claimed injury.

Clearly, Mrs. Wasson does not know why the bottle fell. From the statement made by Mrs. Wasson to Mary Ann Bates, unchallenged in the record, one might even infer Mrs. Wasson was herself the causal agent. Likewise, Mrs. Wasson's expert sheds no light on this dark question of causation. Although he speculates on several designs and practices which may have "helped" the *stability* of the Pepsi display, there is no evidence that *instability* of the display caused the offending bottle's fall. Dressler's "absent rubber mat" theory was not submitted to the jury as an item of negligence, and in the absence of cross-appeal, we must ignore it. The suggestion that the use of glass bottles, per se, constitutes negligence needs little comment. Our law has long been to the contrary. *Rowell v. City of Wichita,* 162 Kan. 294, 176 P.2d 590 (1947).

Finally, we look to the allegation of "failure to warn." Of what did Mrs. Wasson wish to be warned? That glass, when dropped or knocked to a hard surface will break? More importantly, how would that have prevented this accident? When Mrs. Wasson viewed the display prior to the accident she saw nothing amiss. We fail to comprehend what anyone else would have seen or known that she did not see and know from her common knowledge and, thus, we conclude warnings were unnecessary.

That someone, after an accident, can think of things which, if done, might have made the accident less likely, does not constitute proof of negligence. See, for example, *Garst v. General Motors Corporation,* 207 Kan. 2, 21, 484 P.2d 47 (1971), where our high court commented:

"Negligence is not proved merely because someone later demonstrates that there would have been a better way. Reasonable care does not require prescience nor is it measured with the benefit of hindsight."

Again, we note, negligence in the abstract is never actionable. Actionable negligence is that which *causes* harm. In the absence of any proof of negligence or cause, an inference of both amounts to nothing more than impermissible speculation and conjecture. Although we hold jury verdicts in highest esteem, such verdicts must always be founded upon *evidence* and not upon *speculation*

and *conjecture.* When they are not founded upon evidence, they cannot stand.    We find no Kansas cases similar to the one at bar. Several other states have considered the matter, however, with virtually identical results. *Wiebel v. Mid-Continent Bottlers, Inc.,* 70 Ill. App. 3d 224, 388 N.E.2d 475 (1979), arose on essentially the same facts as those presented in the instant case. In *Wiebel,* the plaintiff, Mrs. Wiebel, was shopping for groceries and soda pop at a national food store in Rock Island, Illinois. Only the defendants and the location are different from the instant case, as evidenced by Justice Barry's review of the evidence there:

"Mrs. Wiebel testified that upon coming to the pop display, she picked up a six-pack of Pepsi-Cola and placed it in her shopping cart. She then reached for a six-pack of Dr. Pepper, which she testified was located at shoulder height (approximately 4½ feet). As she reached for the Dr. Pepper, out of her left eye she noticed that two feet away at eye level a single clear bottle was teetering or 'jiggling' and was about to fall. She stepped back to get out of the way of the falling bottle. She then clasped her leg and discovered that she had been cut.

"Because there were no eyewitnesses to Mrs. Wiebel's accident, the plaintiff was the only one who testified to the immediate events leading up to her injury. On cross-examination, Mrs. Wiebel testified that on the day of the accident her recollection was that there was no disarray in the section of the display where the six packs were stacked, that there was nothing unusual about the way in which the pop was stored or shelved, and that the shelves appeared normal. Mrs. Wiebel further testified on cross-examination that not only did she not see any identifying mark on the bottle that fell, but she also did not know whether the bottle she saw teetering actually fell, and in fact did not know what cut her leg." 70 Ill. App. 3d at 225.

At the close of the evidence, the trial court granted the defendants' motions for directed verdicts on the ground that as a matter of law, there was no proof that either defendant was guilty of negligence which proximately caused the injury complained of by the plaintiff. On appeal, the lower court's ruling was affirmed.

*Bahe v. Safeway Stores, Inc.,* 186 Neb. 228, 182 N.W.2d 202 (1970), is also remarkably similar. In that case:

"Plaintiff testified the pop was stacked on a gondola in the usual manner, and she observed nothing unusual about the pop stand. She does not know whether the bottle which struck her was from the carton she reached over or not. She has no idea where the bottle came from, how it fell, or how the broken glass got on the floor. There is no dispute the broken bottle was a 16-ounce Coca-Cola bottle. The Coca-Cola cartons are stacked on the gondola by a representative of the Coca-Cola company. The pop was kept in normal 6-pack cartons stacked one on top of the other, with a plastic flap as a divider between each tier of cartons. They are stacked three or four cartons high. Pop had been stacked in substantially the same manner in this store for at least 7 years. No regular inspection is made of the pop shelves,

but every time an employee passes it if necessary he straightens it up, although most of the time the pop remains where the deliveryman puts it.

"Defendant's manager testified that bottles do not fall off the shelves, but they do occasionally get knocked off. Plaintiff's son, who had worked in a Safeway store in O'Neill, Nebraska, testified that pop was stacked in the same manner there, and it was his observation that it could become wobbly and unstable. This at best is a far cry from evidence that a condition existed which involved an unusual risk for the plaintiff sufficient to impose liability on Safeway.

. . . .

"Plaintiff agrees that this is not a res ipsa loquitur situation, and we are directed to no specific evidence from which we can infer negligence on the part of Safeway. The burden is upon the plaintiff to prove that the condition which resulted in the falling object involved an unreasonable risk of harm to her as an invitee. She was alone in the aisle at the time of the occurrence. She did not observe anything unusual about the pop gondola. She had taken two cartons from the gondola without incident. She was not struck until after she had reached over another carton and removed a bottle of orange pop from the carton behind it. She has no idea as to what happened except that a falling bottle struck her foot. If there had been anything unusual about the pop stand, or if there had been loose bottles or cartons which appeared like they were going to fall, it would seem reasonable that the plaintiff would have noticed this fact, but she testified that she observed nothing unusual. *It is not possible to infer from this evidence the existence of an unreasonable risk of harm to the plaintiff, and if we could assume one existed, that Safeway knew of or in the exercise of reasonable care could have discovered it.*

"Further, there is no competent evidence to show what condition, if any, caused the accident. Plaintiff did produce a witness who a year before had been struck by a falling bottle, but this witness did not know why the bottle fell although she did not think she knocked it off with her hand. Safeway's manager testified that occasionally customers do knock bottles from the shelves with coat sleeves or otherwise, but no one would contend that a storekeeper must follow all customers around the store to be certain they do not knock merchandise from the shelves. It is the storekeeper's responsibility to exercise due care to see that the merchandise is stacked in a reasonably safe manner on his shelves, and where a storekeeper or his employees know of a dangerous condition, or if it has existed for such a period of time that they should know of it, then liability attaches.

"*The testimony of plaintiff's son is obviously intended to suggest that pop gondolas can become unstable; that this situation must have been present in the instant case because plaintiff does not know what happened; and that Safeway, having a duty to exercise reasonable care, failed to discover the instability. The difficulty with this line of reasoning is that there is absolutely no evidence that the pop gondola was unstable, unless we infer that fact from the falling of the bottle of Coca-Cola. To do so would require the highest degree of speculation.* It is certainly more logical to believe that some act of the plaintiff, who was alone at the pop gondola on the occasion in question, was the cause of the accident. In any event, this not being a res ipsa loquitur situation, it was the responsibility of the plaintiff to prove by a preponderance of the evidence that some negligence on the part of Safeway was the proximate cause of her injury. This she has not done." 186 Neb. at 229-232. Emphasis added.

In *Metzel v. Canada Dry Corporation,* 125 Ga. App. 460, 188 S.E.2d 175 (1972), a grocery store patron was also injured by a falling bottle. As in the instant case, there was no evidence presented to account for how the bottle fell. The court upheld the directed verdict, stating:

"In the face of clear evidence that countless people had access to the display and that customers were constantly shifting bottles around, sending the issue to the jury would allow it to engage in the sheerest speculation." 125 Ga. App. at 461.

In *Johnson v. Ins. Co. of North America,* 360 So. 2d 818 (La. 1978), the plaintiff was injured by a falling can as she shopped at a store:

"As she reached toward an upper shelf to get a small can of juice, three large cans of fruit juice fell from a bottom shelf, two of which struck her leg and caused her present injuries. The incident occurred at a section of the supermarket where canned jucies were displayed on open shelving in three tiers. The cans had been removed from boxes and stacked on top of each other on the shelves. Mrs. Johnson testified that she did not notice before the accident how the cans were stacked, but after the accident she did notice that the cans were in disarray." 360 So.2d at 819.

The court stated that:

"While there was some testimony to the effect that if cans were badly stacked they would create a dangerous condition, and the store operator admitted that customers did occasionally move cans from shelf to shelf, there was absolutely no testimony that before the accident in question the juice cans were in disarray or protruding over the shelf edge. The fact that after the accident the cans were disarranged, with three cans on the floor, does not constitute evidence that the cans were in that condition before the accident." 360 So. 2d at 820.

The Court of Appeals of New Mexico was faced with a case highly similar to the one before us in *Rekart v. Safeway Stores, Inc.,* 81 N.M. 491, 468 P.2d 892 (Ct. App. 1970), and held that where no one knows how the accident happened, it is improper to infer negligence. In that case:

"Plaintiff was reaching for a carton of Dr. Pepper when the Pepsi Cola bottle fell. She had not touched any of the soft drink display. She knows the bottle fell from her right but from where, or how far it fell, she does not know. She has no idea what caused the bottle to fall. There was nothing to indicate the accident would happen. There was no one close by; there was no rumbling or shaking of the walls. There were no witnesses. The people she identified as possibly knowing something about the accident were deposed. Their depositions reveal nothing as to the cause. None of the deponents, including plaintiff, gave any testimony as to the condition of the display on the day of the accident. The affidavit went to the customary use of different types of shelving in the area.

"Specifically there is no permissible connection either with a pattern of conduct

or with the lack of certain shelving and the bottle that fell and cut the plaintiff. Here we have no evidence that a messy condition existed at the time of the accident. [Citations omitted.] If such a condition existed it must be inferred. For a messy condition to have been the cause for the bottle falling we must put inference on inference. This we may not do. [Citations omitted.]" 81 N.M. at 493.

The Kansas rule pertaining to inferences is identical. *Farmers Ins. Co. v. Smith,* 219 Kan. 680, 549 P.2d 1026 (1976).

Finally, brief reference should be made to *Bodenheimer v. Food Stores,* 255 N.C. 743, 122 S.E.2d 715 (1961), a case which again involves the unexplained falling bottle situation. In this *per curiam* opinion, the court stated:

"The plaintiff failed to present any evidence from which actionable negligence against either defendant may be inferred. She and no one else was at the display rack at the time the bottle fell. Where it came from she does not know. She did not see any loose bottles about the rack. If she could not see it, there is nothing to indicate the management was negligent in failing to discover it." 255 N.C. at 744.

The gravamen of all of these cases is that where there is no competent evidence pointing to the cause of the accident, a directed verdict should be entered for the defendants.

In conclusion, we note that even Mrs. Wasson's counsel was required to admit she had failed to prove what caused the accident that led to her injury. At the close of all the evidence, in arguments pertaining to instructions, he said:

"Mr. Belot in his argument to the court on his motion for directed verdict, I think, stated the issue appropriately that the cause or causes of the incident itself, that is the falling of the bottles, has never been appropriately explained. Mrs. Wasson was the only witness to it and even she doesn't know what happened in the end."

We concur. Without proof of cause, there is no connection between the injury and the fault, if any there be, of *anyone.* Tort recovery in negligence is premised on causal fault. Finding none proved, we have no choice but to reverse the judgment entered herein and direct the entry of judgment for Brewer's and Pepsi for their costs.

Reversed.