|2LeBLANC, Judge.
Defendant, Wal-Mart Stores, Inc., appeals a judgment in favor of the plaintiff, Wilburn Bennett, finding Wal-Mart Hable, pursuant to La. R.S. 9:2800.6, for injuries sustained by the plaintiff when he sHpped and fell on a black plastic clothes hanger on the floor in a Wal-Mart store. Our review of the record reveals that the trial court confused the facts of this case, as estabHshed by the evidence presented at trial, with the facts of existing jurisprudence, and rendered judgment based on this erroneous finding of fact. Our review of this matter, given the facts as borne out by the record, leads us to a contrary result. Accordingly, the judgment of the trial court is reversed; judgment is hereby rendered in favor of Wal-Mart, dismissing plaintiffs action.
FACTS
On October 20, 1994, at approximately 11:15 a.m., Wilburn Bennett was shopping with his girlfriend at the Wal-Mart store on Gause Blvd. in SHdell, Louisiana. Mr. Bennett testified that he had picked up a few items for purchase, then he and his girlfriend went to the Halloween department. While they were looking at the Halloween merchandise, another customer, needing to get through the aisle, asked Mr. Bennett to ex *633 cuse her and let her pass. According to Mr. Bennett, he took a step back to let the lady pass, and when he stepped back forward, his foot contacted a black plastic hanger that was on the floor; he slipped and fell on the hanger, seriously injuring his foot. Mr. Bennett testified that he did not see the hanger on the floor until after he had slipped on it. After the fall, he and his girlfriend noticed other hangers like the one he slipped on; some were holding costumes and others were scattered on a bottom shelf. They also noticed another black plastic hanger and some black plastic on the floor. Bennett and his girlfriend both testified they did not know how long the hanger had been on the floor or how it got there. According to Mr. Bennett, had he seen the hanger, he would have been able to avoid the fall.
13Bridget Long, Bennett’s girlfriend who was shopping with him, testified that she did not see him fall. According to Ms. Long, she and the plaintiff were on the Halloween aisle looking for pumpkin lights when she stepped forward to let another customer pass. The next thing she knew, Bennett was on the floor behind her, holding a black plastic hanger on which he said he had slipped. A couple of aisles away from the incident, Ms. Long found two female Wal-Mart employees who came to plaintiffs aid. Wal-Mart’s assistant manager, A1 Hitt, was also summoned to the accident site; he interviewed the plaintiff and filled out an incident report.
PROCEDURAL HISTORY
Mr. Bennett suffered a fracture of the base of the fifth metatarsal of his left foot as a result of the slip and fall and brought this action against Wal-Mart to recover for this injury. After a trial, the trial court held Wal-Mart liable to the plaintiff for failing to use reasonable care, and rendered judgment awarding Mr. Bennett $30,000 in general damages, $2,436.07 in reimbursement for medical expenses and $5,988.71 in lost wages. Wal-Mart appealed, urging four assignments of error.
STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Stobart v. State, Through DOTD, 617 So.2d 880, 882-83 (La.1993). In response to a line of cases adopting the mandates of Stobart v. State, our supreme court, in Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, p. 8-9 (La.7/5/94); 639 So.2d 216, 221, clarified its earlier directive:
Notwithstanding the Court’s earlier guidance to reviewing courts in Stobart v. State, Through DOTD ... it was not our purpose in that case to mandate that the trial court’s factual | /¡determinations cannot ever, or hardly ever, be upset. Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. Of course, the reviewing court may not merely decide if it would have found the facts of the ease differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter’s judgment is not clearly wrong or manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. (Footnotes omitted)
APPLICABLE LAW
The law establishing the duty of merchants and the burden of proof necessary for recovery in slip and fall accidents in Louisiana, La. R.S. 9:2800.6, at the time of this incident, provided as follows, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous *634 conditions which reasonably might give rise to damage.
B. . In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1)“Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care, (emphasis added).
This version of the statute[1], enacted by amendment in 1990, reflects an | .revolution in the law governing slip and fall eases in Louisiana, culminating in a decidedly pro-defendant statute—a statute which codifies the “traditional” rule of liability requiring actual or constructive knowledge and places the burden of proof squarely on the plaintiff. Welch v. Winn-Dixie Louisiana, Inc., 94-2331, p. 9-11 (La.5/22/95); 655 So.2d 309, 314. Whether a merchant’s protective measures were reasonable must be determined in light of the circumstances of each case, along with the risk involved, the merchant’s type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the store, and other such considerations. White v. Wal-Mart Stores, Inc., 96-617, p. 5 (La.App. 5th Cir. 1/15/97); 688 So.2d 100, 102, writ granted, 97-0393 (La.3/7/97); 690 So.2d 2.[2]
ANALYSIS
In the context of slip and fall cases, a hazard is shown to exist when the fall results from a foreign substance on the floor or from an otherwise unreasonably slippery condition. Stevens v. Winn-Dixie of Louisiana, 95-0435, p. 5 (La.App. 1st Cir. 11/9/95); 664 So.2d 1207-1211. The facts of the actual fall are essentially undisputed; it is established that Mr. Bennett stepped on a black plastic hanger which was on a white floor in Wal-Mart and which slid out from under him when it was stepped on. Further, there is no evidence in the record to show that Wal-Mart either created or had actual notice of the black hanger (i.e., slipping hazard) on the floor which caused Mr. Bennett to slip and fall. The facts in dispute are those relating to whether Wal-Mart had constructive notice of the dangerous condition prior to the accident, i.e., whether the condition existed for such a period that it would have been discovered if the defendant had exercised reasonable care. See e.g., Jackson v. Delchamps, Inc., 96-2417 (La.App. 1st Cir. 3/27/97), 691 So.2d 332.
Statutorily, constructive notice has a temporal aspect, depending on the length of time the condition existed. See La. R.S. 9:2800.6(B). However, we are also mindful of the language of our supreme court in Welch v. Winn-Dixie, supra, 655 So.2d at 318, that “[t]he length of time a foreign substance is on the floor diminishes in relevance if the defendant merchant has no mechanism [i.e., a uniform, mandatory, non-discretionary, clean-up and safety procedure] in place to discover such a hazard.”
The evidence presented on this issue consists of the testimony of three Wal-Mart employees who were working in the *635 store at the time of the incident and a surveillance tape of the floors at the Wal-Mart store. In an assignment of error, Wal-Mart argues that the trial court committed legal error in admitting the surveillance video tape of the store made almost one year after the accident, “when conditions at the store were not remotely similar and a different manager was in charge of the area at issue.” The video tape was shot by an investigator from plaintiffs attorney’s office on September 28th and 29th, 1995, approximately eleven months after the incident. It was offered into evidence at trial to rebut the testimony of the three Wal-Mart employees concerning Wal-Mart’s floor inspection and clean-up procedures. In Lee v. K-Mart Corporation, 483 So.2d 609 (La.App. 1st Cir.1985), writ denied, 484 So.2d 661 (La.1986), we held that photographs taken of foreign substances on the floor of a store approximately two years following a slip and fall accident were “independently relevant to show how effective the procedures were on the earlier date,” and that the admissibility of evidence consisting of observations made at a later date “is not controlled by the proximity of the date of the photographs to the date of the accident.” _[tLee, supra, 483 So.2d at 614.[3] Furthermore, in this case, the videotape was offered into evidence to impeach the testimony of the Wal-Mart employees. Thus, the trial court did not err in allowing the surveillance tape into evidence. However, in light of the abundance of evidence presented in this case to establish the clean-up procedures in place on the date of the accident, and to establish the condition of the aisle 5-10 minutes prior to the accident, we find the trial court erred in outweighing the unrebutted testimony of three Wal-Mart employees by giving undue weight to the videotape, which relates to conditions existing in the store almost one year later.
Wal-Mart also argues by assignment of error that the trial court committed manifest error in ignoring the specific unrebutted testimony of three store employees and concluding on its own that the employees must have been looking at the store’s shelves instead of the floor. Our review of the record, the jurisprudence, and the trial court’s reasons for judgment convinces us that the trial court confused the facts borne out by the evidence in this matter with the facts of the Welch ease, and its conclusion, based on those erroneous facts is, likewise, manifestly erroneous.
In ruling for the plaintiff, the trial court found the following (we emphasize the portion containing erroneous facts):
In this case, there is a dispute about the presence of the coathanger on the floor, with store employees testifying that they had walked on the aisle some five to ten minutes previous to the accident, without seeing the hanger. However, these employees were performing price checks and stocking shelves, and therefore their eyes would normally have been directed upward to the shelves.
jgThis last statement is wholly unsupported by the record and constitutes manifest error.
A1 Hitt, the corporate representative for Wal-Mart, testified at trial and made a return on a subpoena seeking documentation of Wal-Mart’s clean-up and/or inspection procedures at the store in Slidell as well as any documentation regarding procedures for training its employees regarding clean-up and inspection at the store. Mr. Hitt testified that the information regarding training of Wal-Mart employees was no longer avail *636 able as it had been changed from video format to interactive computer information in the recent years. The documentation which was available he brought with him to the trial; it consisted of Wal-Mart’s safety handbook and the incident report filed by Mr. Hitt on the day of Mr. Bennett’s accident. The safety handbook contains a section entitled “floor hazards” which provides that every associate is responsible to look for and correct floor hazards, in all locations throughout the store and at all times, and which specifies as hazards the following: spills, debris, merchandise, hangers, or any other trip/fall hazards. In addition to this general directive found in the handbook, Mr. Hitt testified that Wal-Mart has a management team at each location whose responsibility includes floor inspections. In addition to the management team, Wal-Mart has a daily maintenance person whose job consists of sweeping the floors, cleaning the trash cans and bathrooms and also to inspect for anything that is anywhere on the floors and have it removed on a continuing ongoing basis, although there are no logs kept by Wal-Mart of the safety sweeps and inspections.
Mr. Hitt testified that he was a department manager in the store when Mr. Bennett slipped and fell. He and several other employees had been in the Halloween department all morning restocking merchandise and condensing the Halloween merchandise to make room for Christmas stock. 19Specifically, Mr. Hitt testified that he had been on the very aisle on which the incident occurred approximately five to ten minutes before the accident and he did not see anything on the floor. In fact, Hitt said he had just accumulated all the debris and cardboard he could find and was heading to the back to dispose of it.
Robin Taylor, another Wal-Mart employee, was also working that day condensing the merchandise on the Halloween aisles. At the time of the fall, Ms. Taylor was two aisles away when a lady told her and a co-employee that her boyfriend had fallen. The co-employee went with the lady to aid Mr. Bennett, and Ms. Taylor went to get a wheelchair. Ms. Taylor testified that she had been working on the aisle where Mr. Bennett fell approximately five to ten minutes prior and she looked but did not see a hanger or any other merchandise on the floor. Ms. Taylor stated that she would have seen it if something had been on the floor.
Julie Thompson, the department manager at the garden center on the date of the accident testified that she was helping Mr. Hitt in the Halloween department at the time of the incident. She testified that she walked down the aisle where Mr. Bennett slipped approximately five minutes prior to the accident and there was nothing on the floor at that time. She stated that the aisle was “clean and neat”.
All three employees testified that, although they were restocking the shelves, they were also inspecting the floors and would have seen a hazard if one existed. Thus, the trial court’s conclusion that the employees were conducting price checks and had their attention focused on the shelves is wholly unsupported and unreasonable in light of the testimony presented.
Furthermore, we find the trial court erred in concluding that the plaintiff bore his burden of proof under La. R.S. 9:2800.6. Plaintiff maintains that Wal-Mart’s lack of reasonable care can be inferred from the store’s failure to have in place a “uniform, mandatory, non-discretionary, clean-up and safety procedure.” Plaintiff asserts the video tape is proof that Wal-Mart 110lacked such inspection procedures on the date of the accident. As stated earlier, we find the trial court gave undue weight to the video tape in light of the unrebutted and consistent testimony of three Wal-Mart employees. Furthermore, the facts of this case are distinguishable from those cases in which a search for “adequate inspection procedures” is necessary due to the lack of evidence regarding actual inspections of the area in question. In this case, three employees testified that they did actual inspections of the aisle on which the incident occurred within five to ten minutes of the accident. Therefore, irrespective of any uniform and routine procedure utilized by Wal-Mart on a regular basis, from which reasonable care can be inferred, the facts of this case reveal that a search for *637 this inference is unnecessary; here we have testimony of actual inspections conducted of the area in question; thus, Wal-Mart’s exercise of reasonable care is evident. The plaintiff’s evidence does not overcome this showing.
For all of the foregoing reasons, we find the trial court committed manifest error in its findings of fact, and its legal conclusion, that plaintiff met its burden of proof pursuant to La. R.S. 9:2800.6, based on its erroneous factfinding, is legal error. Accordingly, the judgment of the trial court is reversed; judgment is hereby rendered in favor of Wal-Mart, dismissing plaintiffs action. Plaintiff is assessed all costs of this appeal.
REVERSED AND RENDERED.
CARTER, J., concurs.

. The statute was amended again by Acts 1996, 1st Ex.Sess., No. 8, § 1, effective May 1, 1996, to enhance the proof required to establish constructive notice; this amendment became effective after the date of the incident in this matter.

. We note that the Supreme Court has granted writs in White v. Wal-Mart Stores, Inc., supra, wherein the fifth circuit affirmed a trial court judgment finding Wal-Mart liable under La. R.S. 9:2800.6, apparently despite the absence of evidence establishing the requisite constructive notice.

. But see Johnson v. Insurance Company of North America, 360 So.2d 818 (La.1978), where our supreme court held pictures taken a year after injury were insufficient to prove that the same conditions existed a year before; see also Brown v. State, Through Department of Transportation and Development, 572 So.2d 1058, 1065 (La.App. 5th Cir.1990); judgment clarified, 577 So.2d 1226 (La.App. 5th Cir.1991); writ denied, 581 So.2d 710 (La.1991); wherein the fifth circuit cited the Lee case for the proposition that “[e]vi-dence of other accidents occurring under different circumstances or conditions is irrelevant and not admissible;” and Stewart v. Great Atlantic and Pacific Tea Company, 94-1592 (La.App. 4th Cir. 3/16/95); 657 So.2d 1327, 1329, where videotapes and testimony regarding a store's floor conditions approximately one year after an accident were ruled inadmissible on the basis that "[tjhe relevant issue is not what A & P's policy was in 1992, 1993 or 1994, but whether the offending banana had been on the floor of the produce aisle on the day of the accident for such a period of time that it would have been discovered if the merchant had exercised reasonable care.”