No. 46,610

Louis Nunez, As Parent and Next Friend of Louis Nunez, Jr., *Appellant,* v. Freeda Wilson, *Appellee.*

(507 P. 2d 329)

Opinion filed March 3, 1973.

*F. G. Manzanares,* of Topeka, argued the cause and was on the brief for the appellant.

*Richard O. Skoog,* of Ottawa, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: This case is concerned with the trial court's exclusion of portions of the testimony of a physician because his expert opinion was not expressed in terms of "reasonable medical certainty." The doctor's testimony was given by a deposition which was read into evidence at the trial.

The facts of the accident are not presently in dispute. On October 27, 1969, Louis Nunez, Jr. was driving his car in a southerly direction in the outside lane of a four-lane street when defendant, who was proceeding south in the inside lane, suddenly turned right and drove her car into plaintiff's. The cars were almost side by side at the time defendant made the turn.

The result was this suit in which plaintiff sought $100 for damage to his car, $375 for the destruction of an electric guitar he was carrying, $219 for medical expenses, $2,675.20 for past

and $15,840 for future lost wages, and an appropriate award for past and future pain and suffering. The chief personal injury was a claimed aggravation of a congenital back problem, producing pain where none had existed before. It was alleged that this would result in a 10% permanent partial disability, with accompanying future pain. The jury returned a plaintiff's verdict of $1,000 and he, considering the amount grossly inadequate, has appealed. The excluded medical evidence, he claims, was vital to his claims for future wage loss and future pain and suffering.

Shortly after the accident plaintiff sought the treatment of Dr. Ernest Szabados, an orthopedic surgeon of Independence, Missouri, who treated him for his back condition over a period of about seven months. The doctor's deposition was taken, and counsel stipulated that all objections were reserved until trial except those going to the form of the question. The critical exchange occurred in the course of redirect examination:

"Q. [By plaintiff's counsel] Okay. Mr. Skoog asked or in a question indicated that conditions like this may get worse, it may get better?

"A. [By Dr. Szabados] Yes, sir.

"Q. Doctor, do you have an opinion as to this patient, Louis Nunez, Jr., whether his condition also could get worse and could get better?

"A. Yes, it could.

"Q. What is your opinion about the *probability* of his getting worse or better?

"MR. SKOOG: I object to it as being irrelevant and immaterial unless it's connected.

"Q. (By Mr. Green) Do you understand the question?

"MR. SKOOG: Also object to the form of the question.

"Q. (By Mr. Green) Okay, do you understand the question, Doctor?

"A. I do. Well, I followed him from December of '69 to July, which is a half a year and still had some subjective complaints. Well, you would think if he was going to get over it that he would have pulled out of it in that length of time, if you had a simple back strain, you know, rest and take good care of it; so he *may have* these minor symptoms indefinitely.

"Q. Would you say that it's *more likely than not* that they would continue for some time?

"MR. SKOOG: I object to that, that invades the province of the jury.

"A. *Well, from my past experience, I will have to answer that yes.*

"MR. GREEN: Thank you, I have nothing further."

(Emphasis added.)

At trial, deposition was read to the jury. At the appropriate time defense counsel renewed his objection:

"Q. [By Mr. Green] What is your opinion about the probability of his getting worse or better?

"Mr. Skoog: I am going to object to that as not only being irrelevant and immaterial, but it invades the province of this jury.

"Mr. Green: I think it's opinion about its probability and is certainly material, Your Honor.

"Mr. Skoog: You didn't ask for his opinion.

"Mr. Green: I most certainly did.

"The Court: All right, I think I will sustain the objection, this goes on here, *the opinion has to be based on reasonable medical certainty and this question is not framed in that manner and I think it's inadmissible.*

"Mr. Skoog: I have an objection to the next one too, Your Honor, for the same reason.

"Mr. Green: Well, so that I understand, the objection is that it's not framed in reasonable medical certainty?

"The Court: That is right.

"Mr. Green: And the ruling is based on that, is that correct?

"The Court: That is right, I think that pertains to—well, I think I'll sustain the objection *for the balance of the testimony* on direct, redirect or whatever it is."

(Emphasis added.)

Plaintiff believes the exclusion of the doctor's answers was prejudicial error in that it deprived the jury of relevant, probative evidence on the issue of the permanency of the alleged injuries. We agree.

The trial court is vested with wide discretion in receiving opinion evidence under K. S. A. 60-456 (*a*). The education, training, experience, and knowledge of a proposed expert witness are factors which a trial judge should consider in exercising that discretion, and even though a witness has been qualified as an expert, his testimony bearing on the issues at hand must be based on facts which are sufficiently accurate, comprehensive, and pertinent to give his opinion probative value. (*Howard v. Miller*, 207 Kan. 246, 485 P. 2d 199; *Howard v. Stoughton*, 199 Kan. 787, 433 P. 2d 567; *Taylor v. Maxwell*, 197 Kan. 509, 419 P. 2d 822.) But there is no issue here as to the doctor's qualifications or the adequacy of the factual background for his opinion. The sole basis for the exclusion of the doctor's answers was that they were not couched in terms of "reasonable medical certainty."

This phrase has apparently achieved a "magical" status amongst bench and bar. The reason for this is apparent; if the "magic words" are missing the answer is suspected of resting on mere guess or conjecture. This is not necessarily so.

In *Myers v. Shell Petroleum Corp.*, 153 Kan. 287, 110 P. 2d 810, we stated that it is necessary "that the facts upon which an

expert relies for his opinion should afford a reasonably accurate basis for his conclusions as distinguished from mere guess or conjecture." (p. 302.)

This idea was restated in *Packer v. Fairmont Creamery Co.,* 158 Kan. 580, 149 P. 2d 629, where we said: "Expert witnesses should confine their opinions to relevant matters which are certain or probable, not those which are merely possible." (p. 584.)

However, evidence of probative value should not be excluded from the jury's consideration merely because a medical expert cannot state a fact with absolute certainty. In *Roark v. Greeno,* 61 Kan. 299, 59 Pac. 655, the court dealt with hypothetical questions concerning the results of an allegedly negligent dental operation. The court said: "The contention of counsel for defendant in error, that the physicians testifying should have been required to state with certainty the cause of plaintiff's condition after a hypothetical case had been submitted to them, would be supposing an exactness in medical science to which its most learned followers have not yet attained." (p. 304.)

There, the court approved testimony of experts to the effect that "plaintiff's physical condition after the operation had not with certainty resulted from the septic conditions of the instruments employed, but that there was a chance or *likelihood* that it did, the *probabilities* being that such was the case." (p. 304, emphasis added.)

The issue in *Frere v. Railway Co.,* 94 Kan. 57, 145 Pac. 864, was whether there was sufficient evidence to sustain a recovery for permanent injuries. The plaintiff and physicians had testified to plaintiff's present physical condition and the cause of the injuries. The court stated that:

". . . There is no essential difference between proof of permanent injury and proof of any other matter. If competent evidence showing or fairly tending to show its existence be submitted, the weight and effect thereof are for the jury, and from the evidence already referred to it would seem fairly deducible that the plaintiff will never be free from the results of the burning and concussion." (p. 60.)

More recently, in *Rowe v. Maule Drug Co.,* 196 Kan. 489, 413 P. 2d 104, we again dealt with this semantic problem when the defendant challenged the sufficiency of a physician's testimony dealing with "consistencies" of history with medical findings. At page 494 we quoted with approval from *Bearman v. Prudential Ins. Co. of America,* 186 F. 2d 662, 665 (10th Cir., 1951):

"Whether there was causal connection between the accident and resulting injury and the atherosclerosis, the rupture of the atheromatous abscess, the thrombosis, or the coronary occlusion presented a question for solution not within the competency of laymen, and a question with respect to which, only a medical expert with training, skill, and experience could form a considered judgment and express an intelligent opinion. Indeed, it perhaps would require a medical expert trained and experienced in a specialized field.

"The great weight of authority supports the rule that medical expert testimony to be sufficient to take the case to the jury must be to the effect that the accident or injury *probably* caused the Insured's death; and that testimony to the effect that a causal connection between the accident or injury and Insured's ensuing death was *possible,* such as testimony that the accident or injury *'might have,'* or *'may have,'* or *'could have'* caused the death of Insured, is insufficient to take the case to the jury, because such testimony leaves the issue in the field of conjecture and permits the jury to speculate or guess as to the cause of death." (Emphasis added.)

We agree that expert testimony regarding personal injuries may sometimes be necessary, and that such testimony of a speculative or conjectural nature is inadmissible. However, the quoted language implicitly recognizes that expert opinion testimony expressed in terms of *probabilities* is sufficient and is probative evidence to be considered by the jury.

The *Rowe* opinion went on to state our approach in these terms:

". . . We will not indulge in semantic refinements respecting each of the particular words used in both the questions and the answers in determining the fair import of the testimony. . . . We think this testimony amounted to an honest expression of professional opinion that there was a causal connection between the collision and the condition complained of. This is all that is or ought to be required." (pp. 494-495.)

We adhere to that position, and find support in other jurisdictions. In *Pucci v. Rausch,* 51 Wis. 2d 513, 187 N. W. 2d 138, in deploring the "semantic merry-go-round" which had taken place at trial, the court stated that "medical probability" more correctly expresses the standard, as there is no "certainty" in medicine. It also noted that: "The words 'liable,' 'likely,' and 'probable' have also been accepted as words connoting reasonable probability as opposed to a possibility." (Id., 51 Wis. 2d at 519.)

In *Maddocks v. Bennett,* 456 P. 2d 453, 457 (Alaska, 1969), the court noted: "This court in the past has equated reasonable certainty with reasonable probabilty." The court went on to approve a physician's answer that there was a "reasonable probability" that the injury was caused by the occurrence complained of. In the same vein, in *Bachran v. Morishige,* 52 Haw. 61, 69, 469 P. 2d 808, the Hawaii court observed:

"We have held that where the issue as to permanency of an injury or as to future pain or suffering is subjective in character, there must be competent expert opinion testimony as to the permanency of the injury or as to future pain and suffering before a jury may be permitted to consider such damages. *Franco v. Fujimoto*, 47 Haw. 408, 390 P. 2d 740 (1964). However, we are not saying any particular words of art are necessary to express the degree of proof required. It is sufficient if the expert's words can be interpreted to show reasonable probability."

The trial court here had some second thoughts on the matter, and apparently took cognizance of the equation of "reasonable certainty" with "reasonable probability" at the time it ruled on plaintiff's motion for a new trial. In that ruling the court fastened onto the doctor's answer to the first question objected to, observing: "The Doctor said he may have some minor symptoms and it says he may not, and *not* that it was reasonably certain *or that he probably would have*." (Emphasis added.) This, the court said, was an insufficient basis on which the jury could find future damages which plaintiff was reasonably certain to suffer. If that were all there were to it, we would agree. The question asked for an opinion on the *probability* of improvement in plaintiff's condition, while the answer was in terms of *possibilities*. However, the court also excluded the next question and answer, which we think supplied the deficiency in the first answer. On his second response, it will be recalled, the doctor stated in substance that in his opinion, from his experience, it was "more likely than not" that plaintiff's symptoms would continue. This, in the language of *Rowe*, supra, was an "honest expression of professional opinion" that plaintiff's symptoms would *probably* continue.

We believe it was error to exclude this testimony merely because "more likely than not" was the qualifying phrase, instead of "with reasonable medical certainty." The expressions "probably," "more likely than not," and others of similar import are proper qualifications for a medical expert's opinion testimony if, taken as a whole, the testimony reflects an honest expression of professional opinion as to reasonable medical probabilities. We believe the stricken testimony did have probative value on the issue of permanent injuries; the jury should therefore have been allowed to consider the testimony and determine for itself the weight it wished to accord it.

It would appear from the record that the primary issue in controversy at trial was the extent of plaintiff's personal injuries. The stricken testimony contained his only medical evidence on his claim

of permanent disability and future pain and suffering. We believe it was necessary for the jury to consider the doctor's opinion along with the other evidence in the case to make a fair determination of this crucial aspect of plaintiff's claims; its exclusion was prejudicial error.

Plaintiff also complains that portions of the doctor's testimony regarding causation of his injuries were excluded for the same reason—the lack of the "magic" words in one question. Again, we believe a fair reading of the entire series of questions and answers would lead to the conclusion that the doctor was testifying in terms of probabilities. Because his opinion concerning causation might be gleaned from other portions of his testimony, the excluded testimony might be regarded as cumulative and its exclusion would not alone constitute reversible error. However, we believe it should have been admitted.

The judgment and the order denying motion for new trial are reversed with directions to grant a new trial on all issues in accordance with the views herein expressed.

APPROVED BY THE COURT.