No. 46,999

ANTHONY C. PIKE, a Minor by and through his mother and Next
Friend, AGNES E. PIKE and KEITH A. PIKE, *Appellees* (Plaintiffs),
v. HAYDEN ROE and the ELDER CATERING COMPANY, *Appellants*
(Defendants).

(516 P. 2d 972)

Opinion filed December 8, 1973.

*John J. Alder,* of Alder and Rixner, of Overland Park, argued the cause, and
*Richard D. Rixner, Donald L. Zemites,* and *Leslie A. White,* of the same firm,
were with him on the brief for the appellants.

*Albert P. Kovac,* of Kansas City, argued the cause, and was on the brief for
the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover damages for personal
injuries suffered in an automobile collision. The plaintiff-appellee,
Anthony C. Pike, was awarded a jury verdict in the amount of
$50,000. The defendants-appellants, Hayden Roe and the Elder
Catering Company, have appealed to this court.

There is no issue as to the liability of the defendants raised on this
appeal. The evidence clearly justified a finding that the defendant,
Hayden Roe, failed to yield the right-of-way at the intersection
where the collision occurred. The plaintiff Pike was a passenger
in the other vehicle.

The defendants' first point on this appeal is that the verdict in
the amount of $50,000 is excessive and is not supported by the
evidence. The defendants recognize that in order for a judgment to
be set aside on the ground of an excessive verdict, it must appear
that the amount of the verdict is so grossly excessive as to shock the
conscience of the court. (*Spencer v. Eby Construction Co.,* 186 Kan.
345, 350 P. 2d 18.) At the trial the evidence disclosed that following
the collision the plaintiff Pike, then a minor 16 years of age, was
thrown out of the truck and dragged along the street a distance of
50 feet. When the vehicle in which he was riding came to rest, he

was pinned between the right front wheel and the curb, having suffered a severe blow to his leg. The whole right side of his face was torn and scratched with deep abrasions. The bottom lobe of his ear was torn loose and his right leg was badly bruised. The plaintiff was taken to the Providence Hospital in Kansas City, Kansas, where X rays were obtained. He was permitted to leave the hospital in a wheelchair about four hours later. He was examined and treated by a number of doctors for a painful condition in his leg for several months. The initial injury occurred in the area of his upper thigh close to the groin. It was described as a blood hematoma with the tearing of tissue and the lymphatic channels in an area known as Scarpa's triangle. The hematoma did not disappear following the injury. As a result the plaintiff was left with a permanent condition consisting of a doughy mass about the size of a fist in the upper leg area. The mass was described as a collection of fibrous scar tissue which is enmeshed in a series of lymphatic channels. Pike's physician, Dr. Sifers, testified that because of the danger of involvement with the lymphatic system surgery was not recommended. Dr. Sifers further testified that in the future Pike would be disabled with respect to any type of athletic activity or manual labor that would involve climbing, prolonged standing or prolonged use of the leg. The lymphatic circulation in the leg is affected so that as Pike uses the leg an obstruction occurs in the lymphatic system of the leg, causing the mass to become larger and harder which causes increased pain in its use. The defendants' physician, Dr. Frank R. Williams, agreed that the plaintiff had suffered a hematoma just below the groin and that the condition will be permanent unless surgically removed. Dr. Williams found injury to the cutaneous nerves which supply the area of the thigh which causes pain in the knee when the leg is used. Pike's testimony was to the effect that the leg has caused him a great deal of difficulty when he engages in athletic activity or while performing duties of his employment with the Board of Public Utilities in Kansas City, Kansas.

The plaintiff was 21-years old at the time of the trial and his life expectancy was about 49 years. Although his actual medical expenses were only $368.61, he was faced with many years of pain and physical disability and the possibility of additional medical treatment. Under these factual circumstances we are unable to say that the verdict is shocking to the conscience or wholly beyond

reason. In this case the trial judge heard the evidence, approved the verdict and refused to grant a new trial on the ground that the verdict was excessive. We should not substitute our judgment for either that of the jury or the trial judge in arriving at an award of damages for the plaintiff.

The defendants' second point is that the trial court abused its discretion in denying the defendants' motion for a new trial on the ground of misconduct of the jury. Their claim of misconduct is based upon a number of circumstances which will be briefly noted. The defendants complain that Juror Williamson failed to disclose on *voir dire* a previous accident which she had experienced as a passenger on a bus in 1965, seven years prior to the trial. For this occurrence she received a settlement of $1750 from the bus company. There was no evidence that Mrs. Williamson mentioned this previous accident in the jury room. She testified that she did not intentionally withhold the information but simply did not think it was that important. Another juror, Mr. Whisman, failed to disclose on *voir dire* that he had calcium deposits on his knees which caused him some pain. Counsel for the defendants asked the entire panel about prior injuries they had suffered. The condition of Whisman's knees was brought about by a disease and not by injury. He merely mentioned his bad knees in the discussion in the jury room. Also, during the days of the trial Juror Easterwood drove several times through the intersection where the collision occurred. He lives in the same general area of the intersection and customarily drove by it every day. It is clear that he did not stop at the intersection, or take measurements or try to judge distances. He merely mentioned to the jury that he is familiar with the intersection and customarily drives through it.

The defendants complain that insurance was discussed by the jury. It was apparently brought up when a woman juror suggested that a high verdict would increase their insurance rates. All of the jurors who were called to testify declared that insurance was not a factor in their verdict. There was some discussion that insurance was not a proper subject to be taken into consideration. Someone brought up the question of how much the plaintiff would have to pay by way of attorney fees out of any recovery. There was no evidence that this matter had any significance in the amount of the verdict. There was some discussion that the young plaintiff might develop cancer in his leg at a later date. The three jurors

who discussed the subject at the hearing on the motion for a new trial testified clearly that although the subject was mentioned it was not a factor in their verdict. The defendants complain that the jurors discussed the possibility of the plaintiff having future medical expenses. We cannot say that this was improper since defendants' Dr. Williams recommended surgery for removal of the mass from plaintiff's leg if the pain became worse. Finally the defendants complain that the jury considered a $50,000 verdict in the light of plaintiff's life expectancy of 49 years, which would come to around $2 per day. Juror Whisman testified that this method was used only after the jury had already discussed a $50,000 verdict and they were simply checking on the $50,000 figure.

It appears to us that the trial court was extremely liberal in permitting defendants' counsel on the motion for a new trial to go into matters affecting the way in which the jury arrived at its verdict. Matters similar to those mentioned above quite often arise during the give-and-take conversation in a jury room. If such matters were always a basis for a new trial, few jury verdicts would stand appellate scrutiny in personal injury cases. The trial court on motion for a new trial and this court on appeal are primarily concerned with whether or not the parties received a fair trail. It is not the misconduct of jurors alone which necessitates a new trial but misconduct which results in prejudice to a litigant and deprives him of his right to a fair and impartial trial. (*Furstenberg v. Wesley Medical Center*, 200 Kan. 277, 436 P. 2d 369.) The refusal or denial of a motion for a new trial for the alleged misconduct of the jury is generally within the sound discretion of the trial court, and unless it appears that this discretion has been abused, refusal to grant a new trial will not be disturbed. (*Nelson v. Hardesty*, 205 Kan. 112, 468 P. 2d 173.) The trial court has an opportunity personally to see and hear all of the witnesses and is in a position to observe the conduct of and interrelationship existing between litigants, counsel and jury. He can intuitively sense the atmosphere in which the proceedings are being conducted. The trial court can thus call to its assistance experiences, observations and occurrences which are denied to us. (*Furstenberg v. Wesley Medical Center*, supra.) From the record as a whole we cannot say that the trial court abused its discretion in refusing to grant the defendants a new trial in this case.

The judgment is affirmed.