(642 P.2d 113)
No. 52,167
No. 52,188

JAMES B. MASSON, II, *et al., Appellees,* v. KANSAS CITY POWER & LIGHT COMPANY, *Appellant.*

FRED A. FREY, *et al., Appellees,* v. KANSAS CITY POWER & LIGHT COMPANY, *Appellant.*

Petition for review denied May 24, 1982.

Opinion filed March 5, 1982.

*Lowell L. Smithson,* of Kansas City, Missouri, and *John H. Murray,* of Murray & Tillotson, Chartered, of Leavenworth, for the appellant.

*L. D. McDonald, Jr.,* and *Kathleen M. Rhoades,* of McDonald & Dykes, of Overland Park, and *Edward J. Chapman, Jr.,* of Leavenworth, for the appellees.

Before FOTH, C.J., REES and SPENCER, JJ.

FOTH, C.J.: These are separate appeals by Kansas City Power and Light Co. from jury verdicts in two condemnation proceedings. In each KCP&L acquired a 160-foot easement across a rural tract for a 345 KV overhead transmission line. The two cases were consolidated because a primary issue in each was the extent to which fear of high voltage transmission lines could properly enter into the computation of damages for the taking of an easement for such a line. That issue was resolved to this court's satisfaction in *Willsey v. Kansas City Power & Light Co.,* 6 Kan. App. 2d 599, 631 P.2d 268, *rev. denied* 230 Kan. 819 (1981). It will not be reexamined here. The appeals will be separately analyzed in the light of *Willsey* and the other issues raised. We reverse in each case for different reasons.

1. The Masson case. The record in this case reveals a consistent effort by the landowners to bring home to the jury the impact of the easement on the personal life of the landowners as opposed to its impact on the market value of their land. Examples are many, but they are epitomized by the extensive testimony of first Mrs. Masson and then Mr. Masson as to their personal fear of electricity and the unknown dangers from high voltage lines. Both testified to their concern after reading a Reader's Digest article on the dangers of electrical "smog" and seeing a television movie "Ohms" on the same subject. They described Mr. Masson's going out along the easement with "neon" light bulbs and seeing them glow. Both found the experience "scary," and Mr. Masson worried about possible leukemia. Mrs. Masson though $30,000 in damages was not enough because she would have to either live with the danger or move.

This is precisely the type of speculative evidence said to be inadmissible in *Willsey,* 6 Kan. App. 2d 599, Syl. ¶ 5: "Mere personal fears of the owner or other witnesses of the presence of a transmission line cannot be made the basis upon which to predicate damages in a condemnation action."

The impact on the jury is apparent. KCP&L's expert put the damages at $4,150, the landowners' expert at $30,640. The jury verdict was $30,640, the exact amount asked for. Although the trial record is silent on the incident, in counsel's affidavit attached to KCP&L's motion for new trial, a juror is reported to have said that the jury asked the bailiff whether it could assess punitive damages. If this did happen it would only demonstrate further the passion and prejudice amply evidenced by the size of the verdict.

The landowners' only argument in response to KCP&L's claim of error on this point is to say that its contemporaneous objections were inadequate to preserve the issue for appeal. We find that at the outset of Mrs. Masson's testimony as to her personal fears KCP&L made an unsuccessful objection to that line of testimony as incompetent and immaterial. There was also an unsuccessful objection to the light bulbs. In the light of what was said in *Willsey,* the objections were good and should have been sustained. In our opinion they were sufficient to preserve the point.

The evidence, once in, provided a steppingstone to the landowners' closing arguments designed to appeal to the sympathy of the jury. Since the argument was based on evidence, albeit admitted over objection, further objection would have been unavailing and was unnecessary. See *Federal Deposit Ins. Corp. v. Cloonan,* 165 Kan. 68, 92, 193 P.2d 656 (1948); *State v. Powell,* 120 Kan. 772, 800-802, 245 Pac. 128 (1926). The improper evidence and the improper argument based thereon were all of a piece, and require reversal for a new trial.

There was also in this case a good deal of evidence and argument on the themes of "small individual versus big business" and "punish the utility for its conduct." Because of our disposition above, we need not consider whether these points were adequately preserved. The impropriety of both approaches is discussed in connection with the Frey case below.

2. The Frey case. In this case the landowner did not testify as to personal fear. The only evidence of fear came in through the

testimony of the landowners' expert appraiser and, while pushing the boundaries at times, it generally stayed within the confines delineated in *Willsey,* 6 Kan. App. 2d 599, Syl. ¶ 6: "While neither the owner nor anyone else may base an opinion of value on personal fear of power lines, an opinion of value of a qualified witness based on the existence of fear in the buying public in general which affects market value is admissible."

The reversible error in this case was the landowners' strategy at trial of depicting the landowners as helpless individuals fighting a rich and ruthless corporation, which should be penalized for its wrongful conduct both in taking an easement which the landowners did not wish to sell and in the manner of taking.

KCP&L, fresh from trying the Masson case, attempted to forestall this approach in the Frey case by motion in limine. The motion sought to preclude counsel during voir dire from, among other things, making the "individual versus corporation" argument or suggesting that there was some impropriety in the taking. The trial court declined to rule on the motion, although it did indicate an expectation that the voir dire not be argumentative.

The result was a question to the jury by landowners' counsel asking if, as a result of seeing the movie "Ohms" or reading the Reader's Digest article, both of which had stressed the dangers of power lines, any juror had "a preconceived bias that Kansas City Power & Light should be penalized more than the evidence supports." While ostensibly designed to discover bias, the question clearly planted the idea that the condemnor should be penalized for its conduct, and there would be evidence as to how much the penalty should be.

In closing argument the theme was amplified. First, the utility's wealth: After referring to the absence of testimony from KCP&L's experts about people building next to existing powerline easements, counsel commented, "Believe me with the size and the money behind Kansas City Power and Light in preparing this case, if it had been there you would have heard it."

Later, after argument from the utility attacking the landowner's value figures, counsel complained to the jury:

"I'm almost over. You know trying a condemnation case against Kansas City Power and Light is an unbelievable experience and I have just witnessed it. The figures I have given are incorrect, pictures are not exchanged but introduced, and then *don't worry about fighting big business,* but if you give that twenty-five thousand two hundred dollars it's going to increase operating costs and we are

going to slip it right to the rate payers, and I don't really think they want me to get into the justice of their rates, but that's what they would like you to do today." Emphasis added.

The wrongfulness of both the taking and the procedure was injected in comments about the fact the utility, under the easement taken, had the right to erect two more towers at some later time. Counsel argued:

"There is no mystery involved with the location of these poles. It's just kind of like saying, Ed we got you twice, we'll put two of them up and we won't tell you where the other two are going. Now you go ahead and use your property, and you go ahead and sell, but when the buyer wants to know where are those other two towers going to be, I'm not going to tell you yet. You go ahead and develop and run your roads and build your houses, then we are going to tell you where we are going to put it. *Is that justice?* Do you think the engineers can't tell these men now, or do you think they can't tell them now if we need to do it again and we will condemn again and pay you for it, *so we don't rape you twice?* No, we don't do it that way. *Is that justice?*" Emphasis added.

### Finally, counsel reached his peroration:

"The case is over now and I have about two minutes and I will sit down and you will get to do into round six. He doesn't get to go with you, this man who has had that place for seventy [sic] years of his life and he and his family for forty, and after your verdict hopefully this evening Mr. White and Mr. Murray can go to a new case, and Mr. Forbes can go to a new case, and Mr. Forbes can go back to Kansas City Power and Light, and I will try another lawsuit, and the twelve of you are going twelve different ways in life, but *you will have done that one American duty and sent a message to a utility that you are not going to put up with the kind of treatment of your citizens,* you have got a chance to be heard that an individual never has." Emphasis added.

The utility promptly objected and moved for an admonition to the jury or in the alternative for a mistrial. The trial court, out of the hearing of the jury, sustained the objection but overruled the motion. No admonition was given, nor was it ever indicated to the jury that the argument was improper.

That it was improper is beyond question. "A condemnation trial is a sober inquiry into values, designed to strike a just balance between the economic interests of the public and those of the landowner." *Sacramento, etc. Drainage Dist. ex rel. State Reclamation Bd. v. Reed,* 215 Cal. App. 2d 60, 69, 29 Cal. Rptr. 847 (1963), quoted approvingly in *Morgan v. City of Overland Park,* 207 Kan. 188, 190, 483 P.2d 1079 (1971). In striking that balance there is no room for appeals to prejudice against the condemnor or sympathy for the landowner. Neither the relative

financial positions of the parties nor the landowners' unwillingness to sell is relevant to the issue of values and damages. See Annot., 21 A.L.R. 3d 936; Annot., 17 A.L.R. 3d 1449; Annot., 32 A.L.R. 2d 9; 75 Am. Jur. 2d, Trial § 288; 88 C.J.S., Trial §§ 189-191.

Our counterpart in Georgia dealt with one aspect of the argument in *Ga. Power Co. v. Redman,* 137 Ga. App. 427, 429, 224 S.E.2d 477 (1976):

"[I]t appears that during the concluding argument counsel for the condemnee referred to the Georgia Power Company as 'a big financial institution' and to 'the mammoth Georgia Power Company.' Language which, by emphasizing the financial disparity of the parties, tends to prejudice jury deliberations has been held reversible. [Citations omitted.]"

It was not reversible in that case only because of the corrective action taken by the trial court in admonishing the jury. Similarly in *Narring v. Sears, Roebuck & Co.,* 59 Mich. App. 717, 229 N.W.2d 901 (1975), the court in reversing a plaintiff's judgment in a personal injury action for omissions in the instructions took pains to observe: "The portions of plaintiff's closing argument which developed the theme of '[b]ig business against Mr. Narring, an 84-year old man' were improper and should not be repeated at the new trial." 59 Mich. App. at 726.

In *Hoffman v. Brandt,* 65 Cal. 2d 549, 552-53, 55 Cal. Rptr. 417, 421 P.2d 425 (1967), plaintiff, a 20-year-old woman driving a Porsche, sued a 69-year-old retired machinist driving a Rambler for injuries sustained when their vehicles collided. Defense counsel argued that the damages asked for would put the defendant in the county poor home. The court reversed on the basis of that argument, saying: "The argument was clearly error. Justice is to be accorded to rich and poor alike, and a deliberate attempt by counsel to appeal to social or economic prejudices of the jury, including the wealth or poverty of the litigants, is misconduct where the asserted wealth or poverty is not relevant to the issues of the case. [Citations omitted.]" See also *Mapco, Inc. v. Farrington,* 476 S.W.2d 50, 54-55 (Tex. Civ. App. 1971): "Bearing in mind that the only litigious issue [in a condemnation case] is compensation for the land involved, matters pertaining to appellant's profits or the difference between the economic positions of the parties are not pertinent, but prejudicial, and should be excluded. [Citation omitted.]"

On the argument that the condemnor should be penalized for the taking, see *City of Jackson v. Barks,* 476 S.W.2d 162, 165 (Mo. App. 1972):

"[I]n closing argument defendants' counsel argued in effect that this was a 'forceful taking' of defendants' property by the City. Such an argument is prejudicial since it tends 'to inflame the minds of the jurors, to arouse their sympathy for the defendants and prejudice against the plaintiff, and for a verdict in a larger amount than warranted by an impartial consideration of the evidence.' *State ex rel. State Highway Commission v. Goodson, Mo.,* 365 Mo. 260, 281 S.W.2d 858."

And on the double-barreled argument presented here, see *Mapco, Inc. v. Holt,* 476 S.W.2d 70, 75 (Tex. Civ. App. 1971):

"Thus, the only ultimate litigious issue before the jury was the just recompense to which appellees were entitled as a result of the condemnation. That amount is the values of the easements taken, together with the diminution, if any, in the market values of the remaining acreage in each tract. The parties are agreed that the easements taken have value and that the market values of the remaining lands have diminished in some amount; appellees, then, are entitled to a money verdict and judgment. The diminution, however, is to be measured by the properly admissible evidence of conditions of the lands before and after the taking of the easements, the suitability and adaptability of the lands, the surroundings, and all circumstances which tend to depreciate the market values. *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936). But *none of these elements of depreciation include a contrast of a wealthy corporation with a farmer trying to make a living on land, a portion of which he did not wish to sell;* or the inclusion of damages by the juxtaposition of the jury's viewpoint with that of appellees; *or infliction of damages because appellant might in the future come upon the land again with the attitude allowed to be exhibited in this proceeding,* or because appellant's attitude or procedure was different from that of other pipeline companies owning easements in the area, or because appellant was involved in other condemnation proceedings, or for the reason that appellant did not make a bona fide attempt to settle with appellees *or because of the intimation that appellant should be punished for its attitude or procedure."* Emphasis added.

Again, as in the Masson case, the landowners do not contend that the argument was proper. They say only that KCP&L's objections were not sufficient to preserve the point and that, if the point is preserved, it was harmless error.

In assessing whether improper argument amounts to reversible error Kansas courts have always given great weight to the presence of absence of an objection and the curative effect of a well-phrased admonition to the jury. The question most frequently arises in the context of prosecutorial misconduct, but has been known to come up in condemnation cases. *E.g., Richards v.*

*Kansas Gas & Electric Co.,* 211 Kan. 199, 505 P.2d 695 (1973) (objection, but no request for admonition or motion for mistrial; no error); *Siler v. City of Kansas City,* 211 Kan. 258, 505 P.2d 765 (1973) (no objection, no request, no motion; misconduct not available as error); *Mai v. City of Garden City,* 177 Kan. 179, Syl. ¶ 6, 277 P.2d 636 (1954) (rule followed). See also *Taylor v. F. W. Woolworth Co.,* 151 Kan. 233, 98 P.2d 114 (1940) (some objections to improper argument overruled, some sustained, but no admonition; reversed). Generally speaking, an admonishment to the jury has been held to cure all but the most egregiously improper comments. *E.g., State v. Perales,* 220 Kan. 777, 780, 556 P.2d 172 (1976); *State v. Lamb,* 215 Kan. 795, 799, 530 P.2d 20 (1974); *State v. Warbritton,* 215 Kan. 534, 535, 527 P.2d 1050 (1974); *State v. Kelley,* 209 Kan. 699, 704-705, 498 P.2d 87 (1972). Some may be so prejudicial as to be incurable. *State v. Reeves,* 224 Kan. 90, 93-94, 577 P.2d 1175 (1978). See also *State v. Murrell,* 224 Kan. 689, 696, 585 P.2d 1017 (1978) (dictum). For a collection of cases dealing with improper argument in the criminal area, see Johnson & Southard, *Prosecutorial Misconduct in Closing Argument: Does Harmless Error Mean Never Having to Say "Reversed?",* 49 J.K.B.A. 205 (Fall 1980).

As our Michigan colleagues observed in *Narring v. Sears, Roebuck & Co.,* 59 Mich. App. at 727:

"[W]e note that plaintiff's counsel

'. . . deliberately, with a calculated risk that the error would be declared harmless, injected a prejudicial statement into the proceedings . . . [and that] [a]ttorneys who attempt such tactics should realize they risk a reversal.' *Cachola v. The Kroger Co.,* 32 Mich. App. 557, 559; 189 N.W.2d 112, 113 (1971)."

We have similarly cautioned counsel about the risks of over-reaching in closing argument. *State v. Gilley,* 5 Kan. App. 2d 321, 328-9, 615 P.2d 827, *rev. denied* 228 Kan. 807 (1980).

In this case counsel for the landowners deliberately injected the improper argument into the proceedings. Counsel for the condemnor did all that could be asked: There was an objection, a request for an admonition, and a motion for a mistrial. We need not consider whether the error could have been cured by an admonition or was so prejudicial as to be beyond cure. The fact is the trial court, although requested to do so, did not admonish the jury. Instead, when the jury went to the jury room almost the last

phrase in its ears was a call to patriotic duty to "send a message" to the utility that its reprehensible manner of dealing with landowners would not go unpunished. It had no intimation from the court that its duty was otherwise.

In this case the condemnor's two experts put the damages at $3,600 and $7,672 respectively, the landowners' witness at $25,200. The jury verdict was $19,000. While the verdict was within the range of the evidence, we are unable to say that the error did not affect the jury's deliberations.

In view of the foregoing we need not consider other points raised on appeal.

Each case is reversed and remanded for a new trial.