(824 P.2d 219)
No. 65,921

ANN MARIE TAMPLIN, THOMAS TAMPLIN, and SUSAN TAMPLIN, *Appellees,* v. STAR ·LUMBER & SUPPLY COMPANY, *Appellant.*

Opinion filed December 31, 1991.

*Jay F. Fowler, Stephen M. Kerwick,* and *Susan H. Tilton,* of Foulston & Siefkin, of Wichita, for the appellant.

*Randall E. Fisher,* of Michaud, Hutton & Bradshaw, of Wichita, for the appellees.

Before REES, P.J., DAVIS and PIERRON, JJ.

PIERRON, J.: In a personal injury action tried to a jury, plaintiff was awarded $723,150.81, based on the negligence of defendant

Star Lumber & Supply Company, Inc. (Star Lumber). Star Lumber appeals the trial court's denial of its motion for a new trial.

Ann Marie Tamplin was six years old at the time she was injured and nine when the case was tried. Ann's parents had gone to a Star Lumber store to look at Formica for a dining room table. While there, a roll of vinyl flooring fell, striking Ann on the head and knocking her to the cement floor. The roll was approximately 6 feet long and weighed about 150 pounds. Star Lumber stored its rolls of vinyl flooring by standing them on one end next to a wall.

The injuries to the victim caused her to bleed through her mouth, nose, and ears; she also vomited blood. Testimony indicated that the pool of blood and water around Ann was probably 5-6 feet in diameter. When Ann was brought into the emergency room, she was initially considered to be in a life-threatening condition, but her condition stabilized. Her skull was fractured in three places, and her eardrum was perforated. After Ann was released from the hospital, later tests determined that her pituitary gland was injured.

As a result of her pituitary gland injury, Ann has a permanent condition known as diabetes insipidus. This is not the more commonly known form of diabetes which is treated with insulin. Ann's condition causes her to urinate quite frequently. She must take a medicine, DDAVP, twice a day to regulate this. Were Ann ever without her medicine and unable to drink the large quantities of water she would require as a result of the frequent urination, she would die.

The medicine is a liquid form which Ann must inhale through her nose or have her parents assist her by blowing the medicine up her nose. Testimony indicated that it embarrasses Ann to take her medicine in front of her friends. Testimony was admitted that when the dosage of medicine needs to be adjusted, Ann does not sleep well because she must get up to go to the bathroom and get a drink frequently. As a result of these restless nights, she will sometimes be found sleeping when other children are out playing. Other testimony indicated Ann was, overall, a normal, active child.

The product label that comes with the DDAVP states that the medicine must be kept refrigerated. As a result, Ann's parents

have to make special arrangements on trips to keep the medicine refrigerated and Ann has had to forego activities like Brownie camp because of her medicine. However, defendant's expert testified that the caution regarding refrigeration may be safely ignored.

One of plaintiff's expert witnesses testified that there is a very slight chance that when it is time for Ann to go through puberty, her pituitary gland will not produce the necessary chemical to trigger sexual maturation. This testimony was admitted, and the jury was instructed that this possibility was too remote and speculative for money damages to be awarded. The jury was instructed to consider such testimony "only as it may bear on the mental anguish, if any, suffered by Ann Marie Tamplin because of the slight possibility that she may not develop normally."

The jury found that Ann's parents were 5% at fault and that Star Lumber was 95% at fault. It awarded $761,211.38 in damages. The trial court entered judgment for the plaintiff in the amount of $723,150.81. Star Lumber timely appeals, asserting that the trial was not fair and it should be granted a new trial. Additional facts will be brought out as necessary.

The first issue on appeal is whether a new trial should have been granted due to alleged juror misconduct.

It has been held that it is within the sound discretion of the trial court to grant or deny a motion for new trial based on juror misconduct. Unless it appears that the trial court has abused this discretion, the refusal to grant a new trial will not be disturbed. *Pike v. Roe,* 213 Kan. 389, 392, 516 P.2d 972 (1973).

"Our rule has always been that it is for the trial court to determine, in the first instance, whether misconduct on the part of the jury has resulted in prejudice to a litigant, and that its judgment thereon will not be overturned unless abuse of discretion is manifest. . . .

"The rationale of the rule is obvious. The trial court is situated far more advantageously to judge whether a verdict stems from misconduct than is this court, on appeal. Not only does the trial judge personally see and hear each witness but he is in a position to observe the conduct of and interrelationship existing between litigant, counsel and jury, and can intuitively sense the atmosphere in which the proceedings are being conducted. The trial court can thus call to its assistance experiences, observations and occurrences which are denied to us." *Furstenberg v. Wesley Medical Center,* 200 Kan. 277, 285-86, 436 P.2d 369 (1968).

It is undisputed that one juror in this case, during the trial, went to the Star Lumber store in question to see how the rolls of vinyl flooring were stored. In defending against a motion for new trial, plaintiff's counsel told the court:

"Mr. Gass had testified that they had taken remedial steps to constrain the rolls of linoleum, and I guess, from what [the juror] told me, she was curious to see if they really did that. They did, and that's what she saw, and she saw nothing more than what was already in evidence at that point."

Apparently, this juror was overheard telling another juror that she had gone to the floor covering store to see how the vinyl was stored. At this point the juror was interrupted by the presiding juror and told not to discuss this any further, and the incident was reported to the court. The court brought the jury in from deliberations, questioned the presiding juror as to whether any discussion had taken place about this juror's investigation, learned that it had not been discussed, and admonished the jury not to discuss the juror's visit to the floor covering store and not to allow the visit to influence its deliberations.

Counsel have stipulated that the results of the juror's investigation at the defendant's store were not discussed by the jury. When the jury resumed its deliberations, both the plaintiff and the defendant moved for a mistrial, on which the court reserved ruling.

In its motion for a new trial and on appeal, the defendant expressed concern that although the results of the investigation were not discussed, the offending juror advocated a finding of 100% fault against Star Lumber and higher damages than were eventually awarded. Defendant contends that the rest of the jurors knew that this juror knew something they did not know and that they gave great weight to the fact she was against Star Lumber. The defendant argues that the jury was prejudiced as a result.

The plaintiff points out that the offending juror was not the only juror who advocated a higher percentage of fault and damages than were eventually awarded. Additionally, plaintiff argues in her brief that it is not clear that the other jurors knew who the offending juror was. This would draw into question defendant's contention that even though the results of the improper

investigation were not made known to the other jurors, they knew who had made the investigation and gave more credence to the offending juror's opinion during deliberations.

Plaintiff is correct in pointing out that the record does not make clear whether the jury knew who the offending juror was. She was never admonished by name by the court. Defendant did file an affidavit of one juror (not the presiding juror) which indicates that during deliberations a juror announced she had gone to the floor covering store, that she was prevented from discussing her findings, and that she continued to participate in deliberations and "adamantly advocated a finding of 100% liability against the defendant for the highest amount of damages suggested by any juror." This affidavit was prepared by the defendant's counsel and mailed to the juror, who signed and returned it. This affidavit indicates that at least this juror knew who the offending juror was.

Should this misconduct result in a new trial? "It is not the misconduct of jurors alone which necessitates a new trial but misconduct which results in prejudice to a litigant and deprives him of his right to a fair and impartial trial." *Pike*, 213 Kan. at 392. Was Star Lumber prejudiced by this misconduct? The jury verdict form indicates that the 12 jurors were unanimous in all but two answers. Question 2 concerning fault percentages had the vote of only 11 jurors, and Question 3b awarding $250,000 for future noneconomic loss (pain and suffering) had the agreement of only 10 jurors. Star Lumber argues that perhaps if the offending juror had not improperly conducted an investigation, there might not have been the 10 required votes needed to award $250,000 in pain and suffering and that since the other jurors knew she had conducted an investigation, they were improperly influenced and may have also wrongly voted for that award. Essentially, Star Lumber contends that there might not have been enough votes to sustain that award without the juror misconduct.

Kansas cases do not appear to address the situation before us. However, they clearly hold that when jurors conduct improper investigations and report the findings to the jury, a new trial should be granted if such misconduct causes prejudice to a litigant and deprives that party of the right to a fair and impartial trial. *Pike v. Roe*, 213 Kan. at 392; *Furstenberg v. Wesley Medical*

*Center,* 200 Kan. 277; *Walker v. Holiday Lanes,* 196 Kan. 513, 413 P.2d 63 (1966); *Kincaid v. Wade,* 196 Kan. 174, 410 P.2d 333 (1966); *Levy v. Jabara,* 193 Kan. 595, 396 P.2d 339 (1964); *Thomas, Administrator v. Kansas Power & Light Co.,* 185 Kan. 6, 340 P.2d 379 (1959); *Kaminski v. Kansas City Public Service Co.,* 175 Kan. 137, 259 P.2d 207 (1953). ·

It is undisputed, however, that the results of the juror's investigation were not reported to the jury. Additionally, it is not disputed that the juror only saw what had already been testified to during the trial.

Kansas case law does indicate the following about juror misconduct. In *Pike v. Roe,* 213 Kan. at 391-92, an automobile accident case, a new trial was not granted despite the fact that one juror had failed to disclose that she had been involved in an accident several years before, another juror had painful problems with his knees brought about by disease as opposed to injury, and a third juror drove through the intersection where the accident happened every day because he lived near there. In *Kincaid v. Wade,* 196 Kan. at 175-77, a new trial was granted after three jurors followed one of the litigants and reported on her driving habits to the jury. As this was a case about injuries from an automobile collision, that was highly relevant. After veiled and mysterious references throughout the trial to plaintiff's business, members of the jury in *Furstenberg,* 200 Kan. 277, acquired a telephone book and determined that plaintiffs were in the insurance business. The Supreme Court affirmed the trial court's refusal to grant a new trial. 200 Kan. at 286.

A new trial was granted in *Walker v. Holiday Lanes,* 196 Kan. 513, as a result of several errors, including that of a juror visiting the accident site and disclosing his findings to the jury. Another juror failed to disclose that he was involved in litigation that had been settled. A party to that litigation had been represented by an attorney with the same name as one of the attorneys conducting voir dire. In *Levy v. Jabara,* 193 Kan. at 599, a new trial was granted because of the inadequate verdict coupled with the unauthorized viewing of the accident scene by the jury. In *Thomas, Administrator v. Kansas Power & Light Co.,* 185 Kan. at 15-16, a new trial was granted after a juror conducted scientific experiments on the arcing and jumping characteristics of elec-

tricity (something not in evidence) and discussed his experiments with his fellow jurors. In *Kaminski v. Kansas City Public Service Co.*, 175 Kan. at 140-41, a new trial was granted when three jurors went out and took measurements at an accident scene and two jurors failed to disclose that they or their families had been involved in a damage suit.

A review of the above cases indicates that generally a new trial was granted as a result of several errors at the trial court level or in the face of egregious juror misconduct. Not one of the above cases relates a situation where a juror's findings were not reported to the jury.

Here, the results of the unauthorized investigation were not reported to the jury, the results were not discussed by the jury, and the offending juror saw nothing more than what already was in evidence. Defendant cites some scholarly work suggesting that strong admonitions to the jury to disregard prejudicial or inadmissible evidence may have a "boomerang" effect in that the jury may in fact give the evidence more weight. However, in the instant case, the defendant has not demonstrated an abuse of discretion by the trial court in denying a new trial to defendant.

The defendant has not demonstrated so much prejudice existed because of juror misconduct that no rational person would agree with the trial court. As the trial court was in the best position to determine whether the jury seemed prejudiced, its order denying a new trial based on juror misconduct is affirmed.

The second issue is whether plaintiff's counsel made an improper reference in closing argument to the $250,000 statutory cap for pain and suffering and, if so, whether a new trial should be granted as a result.

" 'Remarks of counsel are reversible error when, because of them, the parties have not had a fair trial. [Citation omitted.] Of course, the trial court is in a better position than an appellate court to determine whether the verdict resulted from asserted misconduct of counsel or from passion and prejudice, and ordinarily its conclusion in the matter will not be disturbed.' . . . . Where the alleged misconduct is isolated and is insufficient to result in substantial prejudice or prevent a fair trial, the trial court's verdict will not be overturned." *Tetuan v. A. H. Robins Co.*, 241 Kan. 441, 477, 738 P.2d 1210 (1987).

Since defense counsel failed to object to the allegedly improper closing arguments of plaintiff's counsel, and also failed to raise

this issue on the motion for new trial, this court does not have the benefit of the trial court's reasoning.

In closing argument, plaintiff's counsel asked the jury to search its conscience and determine what the pain and suffering Ann Marie Tamplin had endured and would endure was worth. He suggested that the jury might feel an award larger than $250,000 would be fair but asked them to award only $250,000 for Ann's pain and suffering. Counsel told the jury they did not want one penny more than $250,000 for reasons counsel was unable and not permitted to explain to the jury.

As stated above, the defendant did not object to this argument during closing argument nor was the issue raised on motion for a new trial or for remittitur. On appeal, defendant now contends that this argument made improper reference to the legislative cap on pain and suffering awards provided for in K.S.A. 1990 Supp. 60-19a02. The statute provides that "the court shall not instruct the jury on the limitations of this section." K.S.A. 1990 Supp. 60-19a02(d). This does not necessarily mean that counsel is not permitted to refer to the figure of $250,000.

Whether the remarks of plaintiff's counsel informed the jury of this statutory cap is certainly less than clear. Plaintiff's counsel certainly did not make an outright reference to such a cap or limit. And while such a reference may easily be inferred by attorneys familiar with statutory caps, it is another question entirely whether a lay jury would also make such an inference.

Defendant cites law from other jurisdictions which prevents juries from being informed about the effect of legislative damage limits but does not cite any Kansas cases. Defendant does cite one federal case decided in the District of Kansas which holds that juries should not be informed of the statutory limitation on wrongful death damages. *Benton v. Union Pac. R. Co.*, 430 F. Supp. 1380, 1385 (D. Kan. 1977). Kansas courts have not addressed whether this holding in *Benton* appropriately interprets Kansas law.

"In determining whether improper actions by counsel amount to reversible error, Kansas courts have given great weight to the presence or absence of an objection and the curative effect of a well-phrased admonition to the jury." *Tetuan,* 241 Kan. at 479. Where inadvertent, even the highly prejudicial mention of in-

surance may be cured by an instruction to the jury to disregard it. *Kelty v. Best Cabs, Inc.*, 206 Kan. 654, 656, 481 P.2d 980 (1971).

The defendant cites *Masson v. Kansas City Power & Light Co.*, 7 Kan. App. 2d 344, 350-51, 642 P.2d 113, *rev. denied* 231 Kan. 801 (1982), to support its proposition that although great weight is generally given to the presence of an objection, some comments are so prejudicial as to be incurable. *Masson* is distinguishable, however, as the defendant in *Masson* properly objected and moved for an admonition to the jury or, in the alternative, for a mistrial. The trial court sustained the objection but did not give an admonition and denied a mistrial. The argument which was objected to pitted big business against the individual and was quite inflammatory. This court said, "That it was improper is beyond question." 7 Kan. App. 2d at 348.

As no Kansas case has ever held that counsel should not inform the jury of the statutory cap and since it is not clear that counsel did so inform the jury, this is clearly not improper beyond question. Even if it were, an objection would still seem necessary. For those reasons, we find no abuse of discretion in the denial of the motion for a new trial on this basis.

The next issue is whether the district court abused its discretion in allowing expert testimony about the slight chance Ann would not go through normal puberty as a result of her injury and allowing damages to be awarded for the mental anguish that she might suffer from worrying about it.

The trial court is vested with wide discretion in receiving expert opinion testimony. *Nunez v. Wilson*, 211 Kan. 443, 445, 507 P.2d 329 (1973):

"The education, training, experience, and knowledge of a proposed expert witness are factors which a trial judge should consider in exercising that discretion, and even though a witness has been qualified as an expert, his testimony bearing on the issues at hand must be based on facts which are sufficiently accurate, comprehensive, and pertinent to give his opinion probative value."

As the admission of expert testimony is within the judicial discretion of a trial court, "its ruling thereon will not be disturbed on appeal in the absence of abuse of discretion." *Gregory v. Carey*, 246 Kan. 504, 507, 791 P.2d 1329 (1990). Judicial dis-

cretion is abused only when no reasonable person would agree with the trial court. If any reasonable person would agree, then the ruling must be left undisturbed. 246 Kan. at 507-08.

The Supreme Court in *Nunez,* 211 Kan. at 447, announced the rule that expert testimony must not be of a speculative or conjectural nature to be admissible. While magic language like "reasonable medical certainty" does not have to be used, the expert testimony must be expressed in some term of *probabilities* as opposed to *possibilities.* 211 Kan. at 445. Words such as "liable," "likely," or "probable" tend to connote reasonable probabilities rather than possibilities. 211 Kan. at 447.

While it is undisputed that "[e]xpert witnesses must confine their opinions to matters in issue which are certain or probable and not testify as to mere possibilities," *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 307-08, 756 P.2d 416 (1988), it is also undisputed that the testimony in question did not rise to the level of probability.

Plaintiff's expert witness testified that there was a very slight chance that Ann would fail to sexually mature without chemical inducement and, if that happened, Ann would probably be infertile. When the court gave the jury its instructions, it included an instruction telling the jury not to consider that evidence as part of Ann's claim for injuries as this possibility was too remote or speculative. The court instructed the jury that it was only to consider the evidence that Ann might fail to enter puberty as part of her claim for mental anguish.

The defendant correctly points out that no evidence was presented that Ann does suffer anguish in worrying about whether she will develop normally. Ann did not testify. Her mother, however, testified that she took Ann to Portland, Oregon, to see Dr. Greenburg (the expert who testified to this possibility) because she was concerned about whether Ann would develop normally.

Testimony or reference to the possibility that Ann might not develop normally through puberty took up approximately 7 pages out of the 787 pages of trial transcript. Counsel never referred to it again after Dr. Greenburg finished testifying. Counsel did not raise the issue during closing argument to bolster Ann's claim for mental anguish. In her brief on appeal, plaintiff states, "Courts

have long recognized that an injured party may recover damages for mental anguish for the fear of a future medical condition, even if the chance of occurrence is only 'slight' or a 'possibility.' " Plaintiff does not cite any Kansas cases to support this proposition. However, a Fifth Circuit Court of Appeals opinion, applying Mississippi law to the issue of fear of a future medical condition, said:

"[Plaintiff's] fear is plainly a present injury. It is a fear which he experiences every day and every night. It is a fear which is exacerbated each time he learns that another victim of asbestos has died of lung cancer. It is fear which, regardless of whether Jackson actually gets cancer, will haunt him for the rest of his life." *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 414 (5th Cir.), *cert denied* 478 U.S. 1022 (1986).

Following this rationale, it was reasonable to allow the jury in this case to consider the possibility that Ann might worry that she might not enter puberty as a possible element of her mental anguish. Whether the jury did consider it and awarded her damages for worry over this possibility, we will never know. Given the extensive amount of other damages proved in this case (three skull fractures, perforated eardrum, permanent loss of hearing, damaged pituitary gland, and diabetes insipidus) and obvious pain and suffering, the jury award, while large, does not shock the conscience of the court, and the trial judge so found in overruling a motion for new trial and/or remittitur. We find no abuse of discretion in allowing the expert testimony and claim for damages for mental anguish.

The next issue is whether the district court abused its discretion in allowing lay testimony about inflation or in allowing plaintiff's counsel to address inflation in his closing arguments.

K.S.A. 60-456(a) permits a lay person to testify "in the form of opinions or inferences [if it] is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony." Exercising its judicial discretion, the trial court determines whether a witness is qualified to testify as to his or her opinion. The exercise of that discretion is not subject to review except in cases of abuse. *Schmeck v. City of Shawnee*, 232 Kan. 11, 31, 651 P.2d 585 (1982). Additionally, the "latitude permitted counsel in closing argument lies largely

within the discretion of the trial court." *Hudson v. City of Shawnee,* 245 Kan. 221, 235, 777 P.2d 800 (1989), *modified* 246 Kan. 395, 790 P.2d 933 (1990).

Essentially, this issue raises two questions: (1) Did the trial court abuse its discretion in permitting Susan Tamplin, Ann's mother, to testify about the prices paid for Ann's medicine and the percentage by which the prices increased each year? and (2) Did the trial court abuse its discretion by allowing plaintiff's counsel to argue that the jury should consider that the price of Ann's medicine will probably increase as a result of inflation over the next 70 years she is expected to live?

Plaintiff's counsel asked Susan Tamplin what she had paid for the DDAVP since she had been purchasing it for Ann. The court allowed the testimony on the theory that plaintiff was going to prove that the price changes often. The prices Mrs. Tamplin quoted only indicate where the price increased or decreased from the previous price. The medicine is purchased more often than once a month and the prices quoted indicated that sometimes the price was stable for several months. Counsel asked Mrs. Tamplin if she had computed the price increase over the 33-month interval from January 1988 through September 1990, and the court allowed Mrs. Tamplin to answer, as it was just a mathematical computation. Mrs. Tamplin testified, "It's been an increase of over 20 percent."

Defendant suggested that Mrs. Tamplin was being overcharged at the pharmacy where she purchased Ann's DDAVP. The defendant introduced an exhibit detailing what other pharmacies were charging for DDAVP at the time of trial. The defendant did not introduce evidence that the price fluctuations testified to by Mrs. Tamplin were or were not experienced by other pharmacies which generally charged less for the drug than Mrs. Tamplin was paying.

On appeal, the defendant has asserted that the testimony of the price changes and the resulting calculation of the percentage of price increase should not have been admitted. Defendant also suggests that plaintiff's counsel improperly and prejudicially argued the speculative effect that inflation might have on the cost of Ann's medicine. Defendant, however, has cited no Kansas case that disapproves jury consideration of inflation.

While case law indicates that jury verdicts must be founded upon evidence and not upon speculation and conjecture, *Wasson v. Brewer's Food Mart, Inc*, 7 Kan. App. 2d 259, 265-66, 640 P.2d 352, *rev. denied* 231 Kan. 802 (1982), it also indicates that the jury can consider reducing the damage award to present worth without an instruction giving detailed guidance. *Gannaway v. Missouri-Kansas-Texas-Rld. Co.*, 2 Kan. App. 2d 81, 83, 575 P.2d 566 (1978). "[J]urors are familiar enough with interest that they can intelligently take into account the earning power of money." 2 Kan. App. 2d at 83. While the plaintiff suggests that the Supreme Court has recognized that the jury may decide questions of inflation and present value in determining future medical costs in *Gregory v. Carey*, 246 Kan. 504, we are unable to find support in *Gregory* for such an assertion.

In *Hampton v. State Highway Commission*, 209 Kan. 565, 498 P.2d 236 (1972), however, the Supreme Court rejected the dissent by Justice Schroeder which complained that the jury verdict was too high because of the speculative use of inflation. Justice Schroeder suggested that the jury took the expert at face value and used the figure he suggested for loss of future earnings. The expert admittedly factored inflation into his figures. The court apparently rejected Justice Schroeder's view that "[o]ther jurisdictions have generally considered evidence of future inflationary trends as speculative, and therefore incompetent evidence for a jury's consideration. Lost future earnings should be based on present economic facts." 209 Kan. at 588-89.

If Mrs. Tamplin's testimony is in fact opinion testimony, then it would seem that her testimony clearly meets the K.S.A. 60-456 criteria of being rationally based on her perception and helpful to a clearer understanding of her testimony.

Did the trial court abuse its discretion in refusing to grant a new trial as a result of plaintiff's counsel's remarks in closing argument? Counsel contended, and the trial court agreed, that his argument that the jury should factor inflation into its award of future medical costs was made in response to defendant's closing argument. In his closing argument counsel for the defense suggested that an award of $50,000 would be sufficient because it could be invested and with the interest, the investment would return "more than three times the current cost of this medica-

tion." If the medicine never increased in price from the time of trial, then at $896 per year for the next 70 years, it would cost $62,720.

Plaintiff's counsel argued that the jury should not reduce the award to present value because, even though the award can be invested, the investment interest may not be sufficient to cover the increase in the price of DDAVP. This argument was responsive to defendant's closing argument. See *Smelko v. Brinton*, 241 Kan. 763, 769, 740 P.2d 591 (1987).

" 'In summing up a case before a jury, counsel may not introduce or comment on facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in the discussion of it in which he may use illustrations and appeal to the jury with all the power and persuasiveness which his learning, skill and experience enable him to use.' " *Hudson v. City of Shawnee*, 245 Kan. at 235 (quoting *State v. Potts*, 205 Kan. 47, 53-54, 468 P.2d 78 [1970]).

There being no reversible error, the denial of the motion for new trial is affirmed.

REES, J., concurring: I concur in the result.